MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 7
Docket:      BCD-12-110
Argued:      November 7, 2012
Decided:     January 10, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, GORMAN, and JABAR, JJ.

BANKERS LIFE AND CASUALTY COMPANY

v.

SUPERINTENDENT OF INSURANCE

SAUFLEY, C.J.

[¶1]  Bankers Life and Casualty Company appeals from a judgment entered in the Business and Consumer Docket (*Horton, J.*) that affirmed a decision of the Superintendent of Insurance ordering Bankers Life to pay restitution and a civil penalty of $100,000 after a Bankers Life agent engaged in deceptive insurance sales practices in multiple transactions with an elderly woman.  *See* 24-A M.R.S. §§ 12-A(1), 1420-K, 1445, 2155 (2012); *see also* 6 C.M.R. 02 031 917-1 § 6(A) (2007).  We are not persuaded by Bankers Life's challenges to the Superintendent's application of the law, findings of fact, and exercise of discretion, and we affirm the judgment affirming the Superintendent's decision.

## I.  BACKGROUND

[¶2]  The Superintendent of Insurance has licensing and oversight authority over insurance companies and agents who sell insurance and annuity products to

the public. *See generally* 24-A M.R.S. §§ 209 to 211, 1401 to 1420-P, 1441 to 1450 (2012). The Superintendent alleges that Bankers Life, through its agent, sold unsuitable annuities to an elderly client.

## A.    Applicable Statutes and Regulations

[¶3] Bankers Life and its agents functioned as "insurance producers" at the relevant time because they were "required to be licensed under subchapter II-A [24-A M.R.S. §§ 1420 to 1420-P] to sell, solicit or negotiate insurance." 24-A M.R.S. § 1402(5); *see also* 24-A M.R.S. §§ 2, 1413(1), 1420-A(12) (2012). Producers may be subject to discipline, including civil penalties, for "[u]sing fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business in this State or elsewhere." 24-A M.R.S. § 1420-K(1)(H). An insurer such as Bankers Life "[i]s responsible for injuries to consumers resulting from the actions of its appointed producers to the extent of restitution, reimbursement of money or payment of interest to the consumer" and also "[i]s accountable and may be penalized by the superintendent, as provided for in this Title, for the actions of its producers." 24-A M.R.S. § 1445(1)(C), (D); *see also* 24-A M.R.S. § 4 (2012).

[¶4] The regulations of the Bureau of Insurance require producers and insurers to take steps to ensure the "suitability" of recommendations made to individuals about offered annuities "so that the insurance needs and financial

objectives of consumers at the time of the transaction are appropriately addressed." 6 C.M.R. 02 031 917-1 §§ 1(A), 6(A) (2007). In particular, the regulations require that a producer "have reasonable grounds" for the belief that an annuity is suitable based on the financial information that the consumer discloses. *Id.* § 6(A). An insurer or a producer business entity such as Bankers Life must have in place "a system to supervise recommendations," including the recommendations of its insurance producers, "that is reasonably designed to achieve compliance with this regulation." 6 C.M.R. 02 031 917-2 § 6(D)(1), (2) (2007). This system must include "[m]aintaining written procedures" and "[c]onducting periodic reviews of its records that are reasonably designed to assist in detecting and preventing violations of this regulation." *Id.* § 6(D)(1)(a), (b), (2)(a), (b).

B.    Factual Background

[¶5] In the fall of 2007, Matthew F. Juliano, an insurance agent for Bankers Life, met with a seventy-five-year-old woman who had recently been treated for cancer to discuss issues related to Medicare, health, and prescription insurance; long-term care insurance; and IRA and CD options. As a result of that meeting and additional meetings with Juliano and his colleague Timothy E. Farren, a unit sales manager for Bankers Life, the woman purchased three Bankers Life annuities

by liquidating three certificates of deposit, selling her General Electric stock, and rolling over an individual retirement account annuity.[1]

[¶6]   These sales involved several irregularities.  First, Juliano's "fact finder," which summarized the woman's financial situation and was required to be submitted for his supervisor Eugene Gagnon's suitability review, failed to quantify many items, including the amount of the woman's credit card debt.  Although the fact finder stated that the woman believed she needed $20,000 in funds to be "totally liquid and accessible," the entire CD proceeds and all but $15,000 of the stock proceeds were invested in annuities, leaving $6,000 after taxes for her use.  Bankers Life did not require that the fact finder be updated as new products were purchased through Bankers Life and did not require the woman's signature on the form before transactions could be effectuated.  All of this occurred despite a Consent Agreement entered into with the Bureau in 2005 that required Bankers Life's regional director and an independent monitor to conduct ongoing review of suitability training and compliance procedures with periodic reporting.[2]

---

[1]   The Superintendent also found that Juliano had allowed or induced this woman to finance a snowmobile and insure it in her name for use by Juliano, with Juliano to purchase the snowmobile from her through a series of payments.  Bankers Life was not held responsible for this conduct, and we do not discuss it further.

[2]   In July 2006, the independent monitor had determined that the level of detail in the fact finders "failed" in thirty percent of the files reviewed.

[¶7]   Second, the suitability of the IRA annuity rollover was questionable because the Bankers Life annuity had lower guaranteed long-term minimum interest rates than the IRA annuity that the woman had previously held, had more stringent limits on the funds available for withdrawal, and would not mature for ten years—longer than the likely life expectancy for this seventy-five-year-old cancer survivor.[3]

[¶8]   Third, Juliano was not required to supply, as part of Gagnon's review, the mathematical comparisons he used to justify his recommendations.  When he spoke with the woman, Juliano improperly compared the short-term, more favorable introductory guaranteed minimum interest rate for the Bankers Life IRA annuity with the standard guaranteed minimum interest rate of the IRA annuity that it was proposed to replace.

[¶9]   Fourth, the timing of the General Electric stock sale at the end of the calendar year was questionable.  The sale generated $39,000 in capital gains and increased the woman's tax liability by two tax brackets for that year, which affected the calculation of certain Medicare premiums.  Bankers Life's standard sales presentation states that taxes are a consideration that agents take into account, but none of Bankers Life's agents followed up to ensure that the woman obtained professional advice, and none believed that follow-up was required.

---

[3]  In fact, the woman died in November 2010.

[¶10]  Finally, when all of the sales and purchases were complete, the woman's access to funds was diminished and delayed.  She became distressed because she did not have immediate access to the cash necessary to cover expenses related to her house.  Nor was she able to make the charitable donations that she had described to Juliano or to pay off her credit card debt.

[¶11]  Underlying these irregularities was the reality that Juliano did not have a clear understanding of the office's organizational structure.  For instance, Juliano did not know for sure whether Farren or another unit sales manager was his direct manager.  Gagnon tried to have Juliano come to the Bangor office at least once per month, but Juliano did not come if there were snowstorms and would instead receive a telephone briefing and get materials by mail.

[¶12]  The staff of the Bureau of Insurance petitioned the Superintendent to consider disciplinary action against Bankers Life, Juliano, Farren, and Gagnon.  The woman who had purchased the Bankers Life annuities died in November 2010, before the January 2011 hearing.  The Superintendent issued her decision on May 12, 2011.  Relevant to this appeal, she found that Juliano had failed to make reasonable efforts to obtain information necessary to evaluate the suitability of his recommendations in violation of 6 C.M.R. 02 031 917-1 § 6(A); had been incompetent, untrustworthy, and financially irresponsible in his annuity sales in violation of 24-A M.R.S. § 1420-K(1)(H); and had made misleading comparisons

between the woman's existing investments and those offered by Bankers Life in violation of 24-A M.R.S. § 2155.[4]

[¶13] The Superintendent held Bankers Life accountable for Juliano's actions because he was acting as its agent and Bankers Life "failed to make any meaningful effort to prevent the improper sales or take timely corrective action." The Superintendent revoked Juliano's license, imposed on him a civil penalty of $10,000, required Bankers Life to pay a civil penalty of $100,000, and required Bankers Life to pay restitution of $2,801.60 plus interest at the statutory pre-judgment interest rate.

[¶14] Bankers Life and Juliano each timely petitioned for review of the Superintendent's final decision. *See* 24-A M.R.S. § 236 (2012); M.R. Civ. P. 80C. The matters were consolidated in June 2011, and the matter was accepted for transfer to the Business and Consumer Docket in July. The court affirmed the decision of the Superintendent. Bankers Life has appealed.[5]

## II. DISCUSSION

[¶15] When the Superior Court has acted in its appellate capacity in an action brought pursuant to M.R. Civ. P. 80C, we "review a decision of the

---

[4] Findings related to the woman's purchase of a snowmobile for Juliano's use are not relevant in reviewing the Superintendent's ruling on Bankers Life's responsibility for penalties. We do not address those findings in this opinion.

[5] Although Juliano filed a notice of appeal, he and the other parties stipulated to the dismissal of that appeal. *See* M.R. App. P. 4(a)(3).

Superintendent directly for an abuse of discretion, error of law, or findings not supported by the evidence." *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2012 ME 21, ¶ 13, 40 A.3d 380; *see Me. Health Care Ass'n Workers' Comp. Fund v. Superintendent of Ins.*, 2009 ME 5, ¶ 8, 962 A.2d 968. In reviewing the interpretation of a statute, we will first look to the plain language and then, if the language is ambiguous, will "accord due consideration to the Superintendent's interpretation and application of technical statutes and regulations and will overturn the Superintendent's action only if the statute or regulation plainly compels a contrary result." *Anthem Health Plans of Me., Inc.*, 2012 ME 21, ¶ 13, 40 A.3d 380 (quotation marks omitted); *see, e.g.*, *Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶¶ 34-60, 923 A.2d 918.

[¶16] We review the factual findings of the Superintendent to determine whether she "made findings not supported by substantial evidence in the record." *Consumers for Affordable Health Care, Inc. v. Superintendent of Ins.*, 2002 ME 158, ¶ 22, 809 A.2d 1233. In reviewing the findings, we will "examine the entire record to determine whether the agency could fairly and reasonably find the facts as it did," *Rangeley Crossroads Coalition v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223, even if the record contains other inconsistent or contrary evidence, *see Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263. Thus, we will "affirm the findings of fact if

there is any competent evidence in the record to support them." *Martha A. Powers Trust v. Bd. of Envtl. Prot.*, 2011 ME 40, ¶ 11, 15 A.3d 1273 (quotation marks omitted); *see also Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1207-08 (Me. 1982).

[¶17]    As the Superior Court observed, the findings of fact regarding Juliano's misconduct were supported by the record, and those findings, even without the additional findings regarding Bankers Life's inadequate supervision, provided support for Bankers Life's liability based on the plain meaning of 24-A M.R.S. § 1445(1)(C) and (D).  The statute provides that an insurer "[i]s responsible for injuries to consumers resulting from the actions of its appointed producers to the extent of restitution, reimbursement of money or payment of interest to the consumer" and "[i]s accountable and may be penalized by the superintendent, as provided for in this Title, for the actions of its producers." *Id.*  The statute includes no requirement that the insurer be found to have independently taken improper actions, and Juliano's actions bring Bankers Life under these provisions.

[¶18]    Even to the extent that the Superintendent imposed liability on Bankers Life for "failing to conduct adequate supervision and failing to follow its own suitability review processes in an effective manner," the findings of the Superintendent were supported by substantial, competent evidence demonstrating that Bankers Life lacked necessary supervisory practices that would ensure

adequate financial liquidity for the client, prevent misleading comparisons, ensure the accuracy of the fact finders that were completed, require reasonable inquiry to gather suitability information, and ensure the competence and trustworthiness of its producers. *See* 24-A M.R.S. § 1445(1)(A), (B) (requiring an insurer to "ensure adequate training for its appointed producers" and "provide supervision of its appointed producers who sell insurance on its behalf"). Because the irregularities particular to these sales arose when Bankers Life was already on notice that its suitability review process had been failing, there was no error or abuse of discretion in the Superintendent's decisions regarding sanctions.

[¶19] In short, the Superintendent did not err in her statutory interpretation or factual findings and did not abuse her discretion by imposing restitution and a penalty on Bankers Life based on the evidence presented in the administrative record.

[¶20] All other arguments raised by Bankers Life are unpersuasive, and we do not discuss them here.

The entry is:

Judgment affirmed.

**On the briefs:**

Christopher T. Roach, Esq., Catherine R. Connors, Esq., Joshua D. Dunlap, Esq., and Benjamin W. Jenkins, Esq., Pierce Atwood LLP, Portland, for appellant Bankers Life & Casualty Co.

William J. Schneider, Attorney General, and Andrew L. Black, Asst. Atty. Gen., Augusta, for appellee Superintendent of Insurance

**At oral argument:**

Christopher T. Roach, Esq., appellant Bankers Life & Casualty Co.

Andrew L. Black, Asst. Atty. Gen., for appellee Superintendent of Insurance

Business and Consumer Docket docket number AP-11-09
FOR CLERK REFERENCE ONLY