MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2013 ME 61
Docket:      BCD-12-469
Argued:      May 15, 2013
Decided:     June 25, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
             JABAR, JJ.

## PAUL A. DYER

v.

## SUPERINTENDENT OF INSURANCE

JABAR, J.

[¶1]  Paul A. Dyer appeals from a judgment entered in the Business and Consumer Docket (*Horton, J.*) pursuant to 5 M.R.S. § 11007 (2012) and M.R. Civ. P. 80C that affirmed the decision of the Superintendent of Insurance revoking Dyer's licenses and ordering him to pay civil penalties and restitution for violations of the Maine Insurance Code.  *See* 24-A M.R.S. §§ 12-A(1), (5)-(6), 1417 (2012).  Dyer makes three arguments on appeal: (1) the Superintendent erred in making factual findings and credibility determinations; (2) it was an abuse of the Superintendent's discretion to reinstate the same penalties on remand from the Business and Consumer Docket, despite determining that Dyer had not committed several of the statutory violations included in the Superintendent's first judgment; and (3) the revocation of Dyer's licenses was arbitrary and capricious because it

2

was inconsistent with the Superintendent's disciplinary decisions in similar cases. We affirm the judgment entered in the Business and Consumer Docket.

## I. BACKGROUND

[¶2] Before these proceedings, Paul Dyer had held licenses as an insurance producer and consultant for about thirty years. *See* 24-A M.R.S. § 1402(4), (5) (2012). Dyer was the Chief Executive Officer of Legacy Insurance and Financial Advisors, Inc., in Bangor. In the fall of 2004, Dyer gave a speech at the Augusta Civic Center where he met a seventy-two-year-old woman seeking to finance her long-term care. The woman had several meetings with Dyer over the next few months and became Dyer's client. When the client met Dyer, about 90% of her assets, $143,818.58, were in an existing annuity with Modern Woodmen of America, earning a base annual interest rate of 5.45%, with a minimum guaranteed interest rate of 4%, and an additional 0.25% interest on any amount over $100,000. Dyer initially applied for long-term-care insurance for the client, but she was denied coverage. At the disciplinary hearing before the Superintendent, Dyer testified that he then sought to implement a four-part plan to reinvest the client's assets in order to allow her to gift her assets to her grandchildren and qualify for Medicaid.

[¶3] Dyer's misconduct that ultimately led to these disciplinary proceedings originated from a part of the claimed four-part plan: a tax-free exchange of

$39,326.50 from the client's Modern Woodmen annuity to a Single Premium Immediate Annuity (SPIA) with Old Mutual Financial Life Insurance Company.[1] The Superintendent found that Dyer did not adequately explain the four-part plan to the client and never reviewed the terms of the SPIA with her. Although Dyer testified that he believed the SPIA returned about a 2 to 3% interest rate, the Superintendent found that Dyer had told the client that the SPIA would return a 6 to 7% interest rate. In fact, the SPIA's fixed monthly payments of $648.23 for five years yielded a negative interest rate—with the client receiving $432.70 less than she had paid for the annuity at the end of the five-year term. Dyer's company earned a $1,350 commission for this exchange.

[¶4] Dyer attempted to justify his recommendation of the SPIA, arguing that yield was irrelevant because the client's interests were in diversifying her assets from her existing annuity, in the event that Modern Woodmen became insolvent, and guaranteeing a stream of fixed payments that the client could use for living expenses. The Superintendent found that these explanations were "either grossly incompetent or fraudulent," noting that when investing in an annuity like the SPIA, "yield is one of the most important considerations."

---

[1] At the time of the transaction in 2005, Dyer purchased the SPIA from Fidelity & Guaranty Life Insurance Company of New York, which later became Old Mutual Financial Life Insurance Company. For clarity, this opinion will refer to both companies as Old Mutual.

4

[¶5]  Dyer attempted to remedy the shortfall in the SPIA's yield after the client brought the issue to Dyer's attention in 2007.  Dyer contacted Old Mutual by phone and later contacted Old Mutual's legal department by email on November 2, 2007, stating that the client "is about to go to the [Bureau of Insurance]" with the subject heading "Legal problem possible in Maine if this issue isn't handled soon!!!!"  On April 24, 2008, Dyer and the client filed a complaint with the Bureau of Insurance against Old Mutual.[2]

[¶6]  However, during the ensuing investigation, Dyer failed to respond to questions by Old Mutual, instead providing what the representative of Old Mutual called a "dump of his documents that he supposedly collected in the course of selling this product."  In response to the Bureau's investigation, Dyer's attorney provided a letter explaining Dyer's rationale, and Dyer and his attorney met with Bureau staff in October 2008 to answer questions.

[¶7]  During his correspondence with Old Mutual and the Bureau, Dyer claimed to have received a voicemail message from a representative of Old Mutual promising the client a full refund of her premium payment.  Dyer told the Bureau and representatives of Old Mutual that the voicemail was later deleted or recorded over but said that he played the recorded voicemail for the client twice before

---

[2]  Old Mutual responded to Dyer's complaints by increasing the client's stream of payments to $662.65 per month to compensate for the $432.70 loss from her initial premium payment and terminated Dyer for violating its policies for insurance producers.

deleting it. At the hearing, the client testified that she did not remember hearing the message, and representatives of Old Mutual testified that they had no record of that outgoing call. The Superintendent found that Dyer's testimony about the voicemail was not credible and his conduct was "part of a pattern of deception designed to persuade Old Mutual to compensate [the client] so that Mr. Dyer would not be responsible for her losses."

[¶8] On December 16, 2009, the Bureau of Insurance filed a petition for enforcement against Dyer seeking the revocation of his licenses and requesting civil penalties and restitution for the client. The Bureau alleged that Dyer failed to understand the terms of the SPIA contract, failed to secure a product that would benefit the client, failed to ensure that the client understood the transaction, fabricated promises for a full refund, and failed to provide adequate records of the transaction. According to the Bureau's allegations, Dyer's conduct violated the following provisions of the insurance code: 24-A M.R.S. § 220 (2012) (requiring a licensee to make a substantive response to all lawful requests by the Superintendent), 24-A M.R.S. § 1420-K(1)(H) (2012) (prohibiting "[u]sing fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business"), 24-A M.R.S. § 1447 (2012) (requiring producers to keep adequate records), 24-A M.R.S. § 1467 (2012) (requiring a consultant to "serve with objectivity and

complete loyalty the interests of the client and to render to the client such information, counsel and service that . . . best serves the client's insurance or annuity needs and interests"), 24-A M.R.S. § 2152 (2012) (prohibiting unfair or deceptive acts or practices in the business of insurance), 24-A M.R.S. § 2153 (2012) (prohibiting misrepresentation of any policy), and 24-A M.R.S. § 2155 (2012) (prohibiting misrepresentation of the terms of a policy for the purpose of effectuating an exchange).

[¶9]  After a two-day hearing, the Superintendent concluded that Dyer committed all of the alleged violations of the identified provisions of the insurance code, with the exception of 24-A M.R.S. § 220.  On March 7, 2011, the Superintendent issued a written decision revoking Dyer's licenses, ordering Dyer to pay $5,500 in civil penalties, and requiring Dyer to pay the client the full amount of commissions and fees that he received as a result of this transaction. Dyer sought review in the Superior Court, and upon transfer, the Business and Consumer Docket pursuant to M.R. Civ. P. 80C, arguing that the Superintendent erred in excluding some evidence, making factual findings, and finding that the client's testimony was credible.  The court affirmed the Superintendent's judgment on the evidentiary and factual issues, but agreed with Dyer's assertion that the Superintendent had not specified the "unfair" or "deceptive" acts that resulted in Dyer's violation of 24-A M.R.S. § 2152.  The court also vacated the

Superintendent's determination that Dyer violated 24-A M.R.S. § 1447(2), concluding that the statute did not require Dyer to keep a record of future planned transactions. The court remanded the case to the Superintendent to specify Dyer's "unfair" and "deceptive" acts that led to a violation of section 2152.

[¶10]    On remand, the Superintendent removed all references to 24-A M.R.S. § 2152 from the original judgment, concluding that section 2152 only proscribed conduct that other sections of the statute already prohibited. The Superintendent nonetheless reinstated the same penalties as those imposed in the first judgment, reasoning that the remedies were "based not on the number of statutes violated by Mr. Dyer, but rather based on the nature and character of the eleven illegal acts Mr. Dyer was found to have committed." Dyer again sought review and the court affirmed the Superintendent's decision. Dyer timely filed this appeal.

## II. DISCUSSION

[¶11] On appeal of a decision entered in the Business and Consumer Docket "act[ing] in its appellate capacity in an action brought pursuant to M.R. Civ. P. 80C, we review a decision of the Superintendent directly for an abuse of discretion, error of law, or findings not supported by the evidence." *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 15, 60 A.3d 1272 (quotation marks omitted). With respect to the law, "[w]e accord due consideration to the

8

Superintendent's interpretation and application of technical statutes and regulations and will overturn the Superintendent's action only if the statute or regulation plainly compels a contrary result." *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2012 ME 21, ¶ 13, 40 A.3d 380 (quotation marks omitted). In reviewing factual findings, we determine whether the Superintendent "made findings not supported by substantial evidence in the record." *Bankers Life & Cas. Co.*, 2013 ME 7, ¶ 16, 60 A.3d 1272 (quotation marks omitted). "In reviewing the findings, we will examine the entire record to determine whether the agency could fairly and reasonably find the facts as it did, even if the record contains other inconsistent or contrary evidence." *Id.* (quotation marks and citations omitted).

A. Factual Findings and Credibility Determinations

[¶12] Dyer argues that the Superintendent should not have found the client's testimony credible, pointing to repeated instances in her testimony where the client admitted to having a poor memory and where she did not remember the precise contents or existence of certain documents. "No principle of appellate review is better established than the principle that credibility determinations are left to the sound judgment of the trier of fact." *Weinstein v. Sanborn*, 1999 ME 181, ¶ 3, 741 A.2d 459; *see e.g.*, *Sprague Elec. Co. v. Me. Unemployment Ins. Comm'n*, 544 A.2d 728, 732 (Me. 1988). Dyer contends that the exception to this well-established principle is where the testimony is "so farfetched as to compel its

disbelief." *See Merrow v. Me. Unemployment Ins. Comm'n*, 495 A.2d 1197, 1201 (Me. 1985) (quotation marks omitted).

[¶13] Although Dyer argues that the client's testimony "compels disbelief," he cites almost no evidence, other than his own testimony, that directly conflicts with the testimony of his former client. The bulk of Dyer's argument rests on the client's own candid admissions of her memory lapses, which in many instances relate to events that predated the hearing by about six years. When Dyer presented these credibility concerns to the Superintendent at the hearing, the Superintendent explicitly stated that "[the client's] testimony on the most important points was clear and consistent, it was corroborated by the written evidence and the credible portions of Mr. Dyer's own testimony, and I find it highly credible." At best, the Superintendent heard conflicting testimony; "[i]t is not our function . . . in reviewing an administrative decision, to undertake a fresh determination of credibility." *Id.*; *see Poole v. Statler Tissue Corp.*, 400 A.2d 1067, 1068-69 (Me. 1979). None of the evidence that Dyer cites compels disbelief of the client's testimony and thus we defer to the credibility determinations of the Superintendent.

[¶14] Dyer also challenges several of the Superintendent's findings of fact, arguing that they are not supported by substantial evidence in the record. A reviewing court may not substitute its judgment for that of the agency on questions

of fact. *See* 5 M.R.S. § 11007(3) (2012); *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982). "Upon review of an agency's findings of fact we must examine the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128 (quotation marks omitted). We will defer to the agency's findings "if they are supported by substantial evidence in the record, even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency." *Id.* The Superintendent argues that Dyer failed to preserve many of these arguments for appeal by failing to raise them in the Business and Consumer Docket. Assuming that Dyer preserved all of his factual challenges, we conclude that each of the challenged findings is supported by substantial evidence in the record.

[¶15] First, Dyer argues that the Superintendent erred in finding that Dyer breached the consultant's agreement that he created with the client by purchasing an annuity product that he had no reason to believe was suitable for the client and that caused her unnecessary loss. *See* 6 C.M.R. 02 031 917-1 § 6(A) (2007). Dyer argues that the evidence in the record demonstrated that the SPIA was suited to the client's overall needs. Although Dyer argues that the evidence that he presented at the hearing demonstrates that the SPIA diversified her assets and mitigated her

risk, there is substantial evidence in the record that supports the Superintendent's finding that the product was not suitable for the client. Namely, the product featured fixed monthly payments that resulted in an overall loss for the client—a fact that was easily discernable had Dyer performed even basic calculations. Additionally, a representative of Old Mutual testified that the company offers a separate product specifically designed for seniors to qualify for Medicaid. Finally, the client also repeatedly testified at the hearing that she had no desire to gift her assets to her loved ones and that she was primarily concerned with receiving a high yield on her investment.

[¶16]  Second, Dyer argues that the evidence in the record does not support the Superintendent's finding that he failed to cooperate with Old Mutual's response to the Bureau's investigation of this transaction. Dyer does not dispute the allegations that he failed to provide timely answers to Old Mutual's list of questions or that he provided "a dump of his documents" without explanation to the representative of Old Mutual. Instead, Dyer argues that because he "did, in fact, respond" to the requests by Old Mutual and the Bureau, the Superintendent's finding that he failed to cooperate was unfounded.[3] Because Dyer does not

---

[3] In his argument that the Superintendent's finding lacks a factual basis in the record, Dyer also argues that the Superintendent erred in concluding that Dyer's failure to cooperate was a violation of 24-A M.R.S. § 1420-K(1)(H) (2012). Section 1420-K(1)(H) allows the Superintendent to suspend or revoke an insurance producer's license for "[u]sing fraudulent, coercive or dishonest practices, or

12

challenge the evidentiary support for the Superintendent's finding, but rather merely characterizes the evidence differently, we affirm the Superintendent's finding.

[¶17]　Because the Superintendent did not err in making credibility determinations and the Superintendent's factual findings are supported by competent evidence in the record, we defer to the Superintendent's findings. *See Bankers Life & Cas. Co.*, 2013 ME 7, ¶ 16, 60 A.3d 1272.

B.　Penalties

[¶18]　In reviewing the Superintendent's decision pursuant to M.R. Civ. P. 80C, the court noted that, although the Superintendent's first judgment cited numerous violations of 24-A M.R.S. § 2152, which prohibits any "unfair or deceptive act or practice," it did not define precisely which of Dyer's actions were unfair or deceptive. On remand, the Superintendent struck all of the references to section 2152 but reinstated the same penalties as the first judgment. Dyer contends that the Superintendent's decision to reinstate penalties identical to those included in the first judgment was an abuse of discretion because the Superintendent had eliminated all findings that Dyer had violated section 2152.

---

demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business." Because we defer to the agency on matters falling within its realm of expertise, we "limit our review to determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record," *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991), and conclude that the Superintendent did not err in determining that Dyer's failure to cooperate violated section 1420-K(1)(H). *See AFSCME Council 93 v. Me. Labor Relations Bd.*, 678 A.2d 591, 593 (Me. 1996).

[¶19]   At the outset, we note that our review of the Superintendent's judgment with regard to penalties is limited to the appropriateness of the penalties imposed; we do not review the Superintendent's choice of whether to reinstate penalties or to follow the court's suggestion that the issue of penalties should be reassessed.  We review the agency's choice of penalty for an abuse of discretion. *See, e.g.*, *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 19, 843 A.2d 18.

> Review for an abuse of discretion involves resolution of three questions: (1) are factual findings, if any, supported by the record according to the clear error standard; (2) did the court understand the law applicable to its exercise of discretion; and (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness.

*Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074; *see also* Alexander, *Maine Appellate Practice* § 418 at 233 (3d ed. 2008).  Because the evidence in the record supports the facts as found by the Superintendent, we determine whether the Superintendent's choice of penalties is within the bounds of reasonableness and the applicable law.

[¶20]   It is undisputed that the penalties were within the bounds prescribed by the relevant statutes.  First, the Maine Insurance Code explicitly allows the Superintendent to seek revocation of the consultant's license pursuant to 24-A M.R.S. § 1417, which provides that

> the superintendent may, after notice and opportunity for hearing . . . revoke . . . any license issued under this chapter . . . if the

superintendent finds that, as to the applicant or licensee, any of the causes exist that are listed in section 1420-K, and that for purposes of this section apply to . . . consultants as well as producers.

Further, 24-A M.R.S. § 1420-K(1) (2012) provides that "[t]he superintendent may . . . revoke . . . an insurance producer's license" if the Superintendent finds that the producer violated any of the paragraphs (A) through (N) of section 1420-K(1). Here, the Superintendent made eleven separate findings that Dyer violated 1420-K(1)(H), which prohibits "[u]sing fraudulent, coercive or dishonest practices, or demonstrating incompetence, untrustworthiness or financial irresponsibility in the conduct of business in this State or elsewhere." Revocation of Dyer's license was lawful and reasonable in light of the facts and alternatives available to the Superintendent. *See Wood v. Superintendent of Ins.*, 638 A.2d 67, 70 (Me. 1994) (revoking an insurance broker's license for among other things, failure to maintain a "good personal and business reputation" in a violation of a statute existing at the time).

[¶21] Second, the statute also allows the Superintendent to impose civil penalties pursuant to 24-A M.R.S. § 12-A(1) and 24-A M.R.S. § 1420-K(1). The amount of the civil penalty imposed on Dyer is within the bounds prescribed by law, which allows the Superintendent to assess a penalty of up to $500 *per violation*. *See* 24-A M.R.S. § 12-A(1). Here, the Superintendent found that

> [i]n his dealings with [the client], and his subsequent responses to inquiries by the Bureau and by Old Mutual, Mr. Dyer has committed serious violations of the Insurance Code, which demonstrate incompetence and untrustworthiness and warrant . . . the maximum civil penalty of $500 . . . for each of the eleven wrongful acts . . . [that Dyer had committed].

The Superintendent's choice of the maximum penalties—$5,500 for eleven separate findings of violations of the insurance code—was clearly within the bounds of the law and is not unreasonable in light of the facts of this case. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567 ("It is not sufficient [for the purpose of establishing an abuse of discretion] to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court.").

[¶22] Finally, the insurance code also allows the Superintendent to order a licensed insurance producer or consultant who commits violations of the insurance code for which civil penalties may be imposed to pay restitution to his victims. 24-A M.R.S. § 12-A(6). The amount of restitution is not limited by section 12-A(6), and here, the Superintendent required Dyer to pay the client only $1,350, a sum that Dyer testified was equal to the commission that he received on the sale of the SPIA. The Superintendent's order of restitution is permissible pursuant to the insurance code and is well within the bounds of reasonableness. Therefore, the imposition of these penalties was not an abuse of the Superintendent's discretion.

C.     Arbitrary and Capricious Decision

[¶23]   Dyer argues that the Superintendent's judgment was arbitrary and capricious because it is "unduly harsh" and inconsistent with the Superintendent's decisions in factually similar cases.  Although we may vacate a Superintendent's decision that is arbitrary and capricious because it is "wilful and unreasoning and without consideration of facts or circumstances," *see Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 8, 870 A.2d 566 (quotation marks omitted), Dyer does not contend that the Superintendent's decision was without consideration of the facts or unreasoning.   Moreover, when asked to undertake a similar review for consistency among an agency's decisions, we have previously noted that this kind of examination "would take us, as a reviewing court, far beyond our well-established role of reviewing the administrative record for substantial evidence to support the agency's findings."   *See Hall v. Bd. of Envtl. Prot.*, 498 A.2d 260, 266 (Me. 1985).   Having already concluded that the imposition of the penalties in this case was not an abuse of the Superintendent's discretion, we decline to further examine the Superintendent's other decisions.

[¶24]  Because the Superintendent did not err in interpreting the statute or making factual findings and did not abuse his discretion by imposing the penalties permitted in the statute, we affirm the judgment entered in the Business and Consumer Docket.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Michael J. Donlan, Esq., and Seth S. Coburn, Esq., Verrill Dana, LLP, Portland, for appellant Paul Dyer

Janet T. Mills, Attorney General, and Jonathan R. Bolton, Assist. Atty. Gen., Augusta, for appellee Superintendent of Insurance

**At oral argument:**

Michael J. Donlan, Esq., for appellant Paul Dyer

Jonathan R. Bolton, Assist. Atty. Gen., for appellee Superintendent of Insurance

Business and Consumer Court docket no. AP-2011-11 and AP-2012-03
FOR CLERKS REFERENCE ONLY