STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CIVIL ACTION
                                        DOCKET NO. AP-2017-020

FELIX GRACIA,
        Petitioner

                                        **DECISION AND ORDER**
v.                                      **AFTER REMAND**

MAINE DEPARTMENT OF
CORRECTIONS,
        Respondent.


## INTRODUCTION

The matter before the Court is an appeal by Felix Gracia, an inmate at the Maine State Prison, from a disciplinary proceeding that resulted in the imposition of sanctions against him for the offense of "trafficking," a Class A violation. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

As set out in the Disciplinary Hearing Reports dated March 21, 2017 and authored by Lt. Lidia Burnham, the facts are as follows:[1]

---

[1] All dates are in the year 2017. All the facts regarding events prior to March 21, 2017 are contained in Petitioner's Certified Record ("C.R.") at pages 2-3.

1

On January 12, fellow inmate Felix Gracia (Petitioner) gave his sister, Carmen, a phone number for "Ramon's nephew" and told her to give him $600 and that "they are 50."

Between January 12 and January 16, fellow inmate Jose Quinones (whose full name is Jose Ramon Natal Quinones) called his nephew to tell him that a woman from Connecticut, who Lt. Burnham parenthetically states is Carmen, was going to give him $600 and that her brother, parenthetically noted as Petitioner, was going to buy "50 chickens for $600". Lt. Burnham parenthetically interprets "50 chickens for $600" to mean 50 strips of Suboxone for $600.

Four days later, on January 16, Petitioner spoke with Carmen and told her to call the "guy" and tell him to remove the tinfoil. According to Lt. Burnham's report, Suboxone comes in individual packages with tinfoil on the inside.

On January 18, Quinones called Carmen who said his nephew had not called. He gave her his nephew's phone number and told her to text him. On Friday January 20, Quinones called his nephew who said that the package would arrive Tuesday or Wednesday.

The package was delivered to Carmen on January 26, and on the same day Petitioner called Jose Santiago and discussed arrangements to pick "it" up. Petitioner also asked Carmen to open the package and count "them." She said she only received 45 and Petitioner was upset because he paid $600 for 50. She told

2

Petitioner on February 2 that when the "guy," parenthetically noted as Santiago, showed up at her house she gave him 50.

No Suboxone had arrived at the prison by the time Lt. Burnham's report was submitted on March 21.

On March 30 the first disciplinary hearing was held and Petitioner was found guilty. (C.R. 9.) The guilty finding was affirmed by the Chief Administrative Officer or designee. (C.R. 15.) Upon Petitioner's appeal to the Superior Court pursuant to 5 M.R.S. §§ 11001-11008 and M.R. Civ. P. 80C, this Court granted Judicial Review in its December 18, 2017 Decision and Order after finding a number of procedural violations in the first hearing. *Gracia v. Me. Dep't of Corr.*, No. AP-17-20, 2017 Me. Super. LEXIS 290 (Dec. 20, 2017). Disciplinary Matter No. MSP-2017-0478 was reversed and remanded to the Maine Department of Corrections with instructions to conduct a disciplinary hearing that complied with prison policies and procedures. *Id.* at *11.

Pursuant to the Remand Order, Respondent held a second disciplinary hearing on February 9, 2018.[2] Resp't's Br. 5. All information from this hearing, including the summary, was lost due to an error and could not be recovered. *Id.* 6. On March 22, Respondent vacated the results of the second hearing and decided to hold a third disciplinary hearing. *Id.* A "Notice of Continuation – Disciplinary Hearing" dated

[2] All dated references from this point forward occurred in 2018.

3

March 22 notified Petitioner of the hearing on the following day. Supplemental Certified Record 2 ("Suppl. C.R."). On March 23, a third disciplinary hearing occurred and Petitioner was found guilty of trafficking. *Id.* 3. The Hearing Officer relied solely on Lt. Burnham's report. The Petitioner appealed the Hearing Officer's finding of guilt on March 30 and the guilty finding was affirmed on the same date. *Id.* 7, 9. Also on March 30, the Hearing Officer submitted a letter to the Deputy Warden with additional information about the hearings. *Id.* 8. On May 29, 2018 Petitioner filed an appeal in the Superior Court pursuant to M.R. Civ. P. 80C and 5 M.R.S. §§ 11001-11008 alleging a number of procedural violations.

## DISCUSSION

Judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶

4

3, 985 A.2d 501.

The court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 11, 69 A.3d 416 (quoting *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d 1128). The court will defer to those findings so long as they are supported by substantial evidence in the record and "even if the record contains inconsistent evidence." *Id.* The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the evidence, supported by substantial evidence in the record, should not be disturbed by the court. *Cotton v. Maine Employment Security Comm'n.*, 431 A.2d 637, 640 (Me. 1981).

Title 34-A M.R.S. § 3032(1) mandates that the Commissioner of the Department of Corrections adopt rules governing the discipline of inmates that will ensure a "high standard of fairness and equity." An inmate who is charged with a violation of the disciplinary code is entitled, among other things (1) to have the hearing officer's finding of guilt or innocence based only on evidence presented at the disciplinary hearing; (2) to call witnesses and present evidence, which shall not be unreasonably withheld, and if withheld, a reason for such withholding shall be given; and (3) to be provided with notice of the hearing twenty-four hours before the

5

hearing. MDOC Policy 20.1, Procs. C (1), (7)-(10), (13). The Court focuses on whether these aspects of disciplinary hearing policies and procedures were violated, and whether there was substantial evidence in the administrative record to support the Hearing Officer's findings.

Petitioner alleges five procedural violations: (1) the notice of continuation was improper and he was not given a formal notice of the disciplinary hearing or a copy of the incident report; (2) he was denied the opportunity to call witnesses or to submit a written statement at the hearing; (3) he did not approve his counsel substitute; (4) he was not informed that the Hearing Officer would use a translation service at the hearing; and (5) holding a third hearing was unfair and violated his due process. The Court has reviewed the entire record submitted by Respondent, and concludes that the Hearing Officer's finding of guilt is supported by substantial evidence contained in Lt. Burnham's report and that Respondent did not commit any procedural violations requiring reversal. Each of Petitioner's allegations is addressed in turn.

## 1. Notice given to Petitioner

Petitioner states that he received notice of the third hearing on the same day the hearing occurred, March 23, although the notice was dated March 22, and that this is in violation of prison policy.[3] In reviewing the record, the notice of the hearing

---

[3] Petitioner also argues that he was provided with the wrong form and did not receive a copy of the disciplinary report. This argument is not addressed as it is without merit. Petitioner received due process because the charges against him do not come as a surprise: this is the third hearing on the same charges. Notification of a hearing is notification, regardless of the form it is on.

is, in fact, dated March 22, 2018, and scheduled a hearing for the following day at 1:00 p.m..[4] (Suppl. C.R. 2.) Substantial evidence in the record supports that twenty-four hours' notice was given to Petitioner, but even if this notice was given to Petitioner the day before the hearing and less than twenty-four hours in advance, a matter of a few hours short of the full twenty-four provided for in the Prison Policy does not amount to the Respondent conducting an action that was "procedurally unlawful." Petitioner was afforded proper notice of the disciplinary hearing.

2. **Opportunity to call witnesses and present evidence**

Petitioner next alleges that the Hearing Officer did not permit him to call witnesses or to submit written evidence into the record. The disciplinary hearing summary shows that no witnesses or exhibits were presented. (Suppl. C.R. 3.) Under the section titled "Reasons for withholding or restricting testimony or exhibits or for failure of witness to testify," "N/A – Phone call is a security issue, can't share with prisoner" is written. *Id.* Whether an inmate is permitted to listen to an audio recording, such as a phone call, when to do so would compromise security, is a

---

[4] Respondent argues that this issue has not been preserved for appeal as it was not addressed in Petitioner's initial appeal of his guilty finding to the Chief Administrative Officer at the prison. The relevant portion of Petitioner's appeal states: "The hearing was not conducted according to Policy." (Suppl. C.R. 7.) It is unclear what level of specificity in an appeal at the agency level is required to preserve an issue. It is arguable that Petitioner preserved the notice issue by claiming that the hearing "was not conducted according to Policy." If this type of argument is allowed to proceed, however, it would mean that appellants could argue virtually anything in their appeal before the court, so long as in the agency appeal they broadly claimed that the agency did not comply with its own procedures. Given how deferential agency decisions are reviewed, allowing broad and generic statements like this to be the basis of an appeal and exhaust administrative remedies would seem to implicitly go against existing precedent.

matter within the discretion of the hearing officer. *See* Policy VI (C)(10). The record also includes a March 30 statement from Unit Manager Blakely, the Hearing Officer, in which he states the Petitioner "never requested a translator, never requested any witnesses nor did I deny him to write any statements." (Suppl. C.R. 8.)

Because the "N/A" written in the disciplinary hearing summary only addresses the phone call evidence, it presumably indicates that it was not necessary to fill out the section in more detail regarding reasons for withholding or restricting witness testimony or exhibits because neither was presented, and the Hearing Officer withheld only the phone call. This, coupled with the Hearing Officer's statement that the Petitioner did not request any witnesses and that Petitioner was not denied the opportunity to make written statements is substantial evidence that Respondent complied with the prison policy's procedural requirements and 34-A M.R.S. § 3032(6).

### 3. Approval of counsel substitute

Petitioner next argues that he was not permitted to select his counsel substitute. Prison policy gives Petitioner "the right to be assisted at the hearing by counsel substitute." MDOC Policy 20.1, Procs. C(5). Parts of the policy suggest that the prisoner may be able to request specific counsel substitute to represent him. *See*

MDOC Policy 20.1, Procs. B(15).[5] Respondent counters that Petitioner was assisted by counsel substitute Mr. Dwyer at the disciplinary hearing and that this is all that was required of Respondent. (Suppl. C.R. 3.) Additionally, there is nothing within the record or Petitioner's Brief to indicate that the Petitioner requested, and was denied, different counsel substitute. Because there was no request for a different counsel substitute, and the Petitioner was represented by counsel substitute, no procedural violation occurred.

### 4. Translation services

Next, Petitioner alleges that he was not informed that a translation service was being used at his hearing. He states that if he had been aware of this resource he would have used it to present a more effective defense. Nothing in the record reflects a request from Petitioner for translation services. Instead, the record shows exactly the opposite: that Petitioner never requested a translator. (Suppl. C.R. 8.) There is no policy regarding prisoner discipline that addresses translation services during a disciplinary hearing. Translation services are not addressed in the statute governing disciplinary action towards prisoners. *See* 34-A M.R.S. § 3032(6). Because there is no affirmative right to translation services, and no request for those services was

---

[5] "The notification shall also inform the prisoner that, if he or she wishes to be represented by counsel substitute, he or she shall inform the disciplinary hearing officer of the counsel substitute he or she has selected . . . . Facility staff shall facilitate communication between the prisoner and the counsel substitute he or she requests."

made, and because the record shows that a translation service was used, Respondent did not commit any procedural violation.

### 5. The holding of a third hearing

Petitioner generally objects to the third hearing arguing that it placed an undue burden on him and that Respondent did not act impartially. This argument is without merit. Neither the statute governing prisoner discipline nor the prison's own policy prohibits the holding of a third hearing. Supporting the third hearing was this Court's December 20, 2017 Decision and Order specifically requiring the Respondent to hold another disciplinary hearing "that complie[d] with Prison Policies and Procedures." *Gracia v. Me. Dep't of Corr.*, No. AP-17-20, 2017 Me. Super. LEXIS 290, at *11 (Dec. 20, 2017). It is unfortunate that the information from the February 9, 2018, hearing was lost and could not be recovered due to an error, but that, standing alone does not amount to a violation of Petitioner's due process rights. Because Respondent was ordered to hold a hearing that complied with its own policies and procedures and did so, albeit on the third attempt, there has been no procedural or due process violation by holding a third hearing.

### CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED.

10

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: September 30, 2018

William R. Stokes
Justice, Maine Superior Court

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2017-020

FELIX GRACIA,
          Petitioner

**DECISION AND ORDER**

v.

MAINE DEPARTMENT OF
CORRECTIONS,
          Respondent.

## INTRODUCTION

The matter before the Court is an appeal by Felix Gracia, an inmate at the Maine State Prison, from a disciplinary proceeding that resulted in the imposition of sanctions against him for the offense of "trafficking," a Class A violation. This appeal has been brought in accordance with 5 M.R.S. §§11001-11008 (Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

As set out in the Disciplinary Hearing Report dated March 21, 2017, and authored by Lt. Lidia Burnham, the facts are as follows:[1]

---

[1] All events occurred in the year 2017. All the facts regarding events prior to March 21, 2017 are contained in the Certified Record ("C.R.") filed by the Respondent at pages 2-3.

Petitioner "vehemently opposes" the description of events as set out in Respondent's brief. This argument is without merit, since Respondent's brief sets out the facts nearly word-for-word as they are stated in Lt. Burnham's report, only altered for ease of reading because, as Petitioner also argued, the report contains grammatical, spelling, and syntactic errors.

1

On January 12, Petitioner gave his sister, Carmen, a phone number for "Ramon's nephew" and told her to give him $600 and that "they are 50."

Between January 12 and January 16, fellow inmate Jose Ramon Quinones called his nephew to tell him that a woman from Connecticut, who Lt. Burnham parenthetically states is Carmen, was going to give him $600 and that her brother, parenthetically noted as Petitioner, was going to buy "50 chickens for $600." Lt. Burnham interprets "50 chickens for $600" to mean 50 strips of Suboxone for $600.

On January 16, Petitioner spoke with Carmen and told her to call the "guy" and tell him to remove the tinfoil. According to Lt. Burhnam's report, Suboxone comes in individual packages with tinfoil on the inside. Also on January 16, Petitioner told Carmen that someone was going to call and meet her at her house.

Petitioner spoke with Carmen on January 26 and she told him that the package arrived. The same day, Petitioner called Jose Santiago and told him that he needed to call because "it" was there and waiting for him to pick "it" up. On January 29, Petitioner called Santiago again who said that he had made arrangements to "pick that up" on Wednesday.

On January 30, Petitioner called Carmen and told her that "El titere," who Lt. Burnham parenthetically claimed was Santiago, would call her later and meet her on Wednesday. Petitioner also asked Carmen to open the packages and count "them." She said she only received 45, and Petitioner was upset because he paid $600 for 50.

2

On February 2, Petitioner called Carmen who said that the "guy," noted parenthetically as Santiago, showed up at her house and she gave him 50.

Between February 11 and February 20, Petitioner attempted several phone calls to Santiago, who did not answer, so he asked Carmen to contact him and get the "stuff" back. On February 20. Petitioner told Carmen that he spoke with the "guy," parenthetically identified as Santiago. On February 28, Petitioner told Carmen that he hoped that over the weekend he was going to get the "stuff in." Between February 28 and March 21, no Suboxone arrived at the prison.

On March 22, Lt. Burnham's report was approved and forwarded for investigation, and an investigation was opened. (C.R. 4). Petitioner was read the report and charged with a trafficking violation. (C.R. 3, 4). Petitioner did not make a statement in regards to the opening of the investigation. (C.R. 4). On March 27, Petitioner received notice of the hearing scheduled for March 30 and indicated that he did not wish to call witnesses at the hearing. (C.R. 1).

Petitioner requested access to all staff, video, phone, and forensic evidence. (C.R. 6). He also requested, in a written and undated document, to examine Lt. Burnham, although he did not otherwise request to present any witnesses. (C.R. 1, 6, 8). Respondent contends that no video or forensic records, or additional staff reports exist. (Resp.'s Br. 9, n.2). Petitioner was denied access to the phone records, for which no reason was given. (C.R. 8).

3

In the Summary of Hearing dated March 30, the space under the heading "name of any witnesses and summary of testimony and any exhibits presented" is blank. (C.R. 8). This would appear to indicate that no evidence of any kind was presented at the hearing. Based on the findings of the hearing officer (Capt. Abbott), however, it is apparent that he did, in fact, consider evidence at the hearing. (C.R. 8).

The hearing officer's findings were as follows:

> "The prisoner is guilty based on the officers [sic] report. I was briefed by S.I.I. about the case and with that information and the report I do feel that this prisoner was attempting to have drugs mailed into the facility." (C.R. 8).

Petitioner appealed to the Chief Administrative Officer or designee on April 3. (C.R. 12). The guilty finding was affirmed on April 7. (C.R. 13).

## DISCUSSION

Title 34-A M.R.S. §3032(1) mandates that the Commissioner of the Department of Corrections adopt rules governing the discipline of inmates that will ensure a "high standard of fairness and equity." Section 3032(6) requires that a "client" (inmate) is entitled to an "impartial hearing" before being subjected to punishment. To implement that right to an impartial hearing, the Legislature has articulated a number of specific rights which the client must receive.

In compliance with the legislative directive, the Commissioner has, in fact, adopted rules governing the way disciplinary hearings for inmates are to be

4

conducted. An inmate who is charged with a violation of the disciplinary code is entitled, among other things, to: (1) have the hearing officer's finding of guilt or innocence based only on evidence presented at the disciplinary hearing; (2) be allowed access to evidence, which shall not be unreasonably withheld or restricted, and if withheld or limited, a reason given for any such withholding or limitation, and; (3) be provided with a summary of any confidential information relied upon by the hearing officer in making his finding of guilt or innocence. MDOC Policy 20.1, Procs. C (9)-(13). The court focuses on whether these aspects of the disciplinary hearing policies and procedures were complied with, and whether there was substantial evidence in the administrative record to support the hearing officer's findings.

This court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lake v. Board of Environmental Protection*, 2001 ME 18, ¶ 13, 989 A.2d 1228 (emphasis added). The question is whether the record "contains competent and substantial evidence that supports" the hearing officer's findings and whether he correctly applied the law to the facts. *Nattress v. Land Use Regulation Comm'n.*, 600 A.2d 391, 394 (Me. 1991). The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the

5

evidence, supported by substantial evidence in the record, should not be disturbed by this court. *Cotton v. Maine Employment Security Comm'n.*, 431 A.2d 637, 640 (Me. 1981).

"Administrative agencies are bound by their own rules of procedure promulgated pursuant to legislative grant of power, which rules have the force of law." *Russell v. Duchess Footwear*, 487 A.2d 256, 259-60 (Me. 1985) (Dufresne, A.R.J. concurring); *see also FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 549 ( 2009) ("Moreover, an agency must act consistently. The agency must follow its own rules"). While Supreme Court precedent and Maine statutory law do not expressly require the hearing officer to explain why he refused an inmate's request to examine certain evidence, the Department's Prison Discipline Policy does. 03-201 C.M.R. ch. 20 § 20.1 Procedure C(10).

The court has reviewed the entire record submitted by Respondent MDOC, and it may be that the hearing officer's finding of guilt was supported by substantial evidence contained in Lt. Burnham's report. There are parts of the record, however, that the court finds the hearing officer relied upon that were not made available for judicial review in this Rule 80C appeal. In particular, it is apparent that in making his findings, the hearing officer relied upon a briefing by the S.I.I. (Security and Interior Investigations) unit, which may have included recordings of telephone conversations, and potentially confidential information, none of which was made

6

available to Petitioner at the time of the hearing, and none of which has been included in the certified record presented to the court for review on appeal.

Respondent contends that the hearing officer's decision was based only upon Lt. Burnham's report. A complete reading of the hearing officer's findings, however, reveals that he also relied upon a prior, *ex parte* briefing by the S.I.I. unit. MDOC Policy 20.1, Proc. C (13) states that at the disciplinary hearing, the hearing officer's "finding of guilt or innocence must rest solely upon evidence produced at the hearing." According to the Summary of Hearing, no exhibits or witnesses were presented. Yet, the parties apparently agree that: (1) Lt. Burhnam's report was presented as evidence at the hearing, and; (2) the information presented to the hearing officer by S.I.I. in the briefing was not disclosed at the hearing. This appears to be in direct violation of the MDOC policy by having Petitioner's guilt decided based on evidence that was not disclosed to him or presented at the hearing, and against which he could not possibly defend. Neither the information obtained at the S.I.I. briefing, nor any summary thereof, was provided to the court as part of the certified administrative record.

If the S.I.I. briefing contained confidential information, the hearing officer cannot automatically deny Petitioner access to it. MDOC Policy 20.1, Procs. C (11) & (12) require that when confidential information is necessary to support a finding of guilt, the identity of the informant shall be removed and a summary of the

7

remainder of the confidential information shall be presented at the hearing. Thus, not only was the information from the S.I.I. briefing required to be disclosed to Petitioner because the hearing officer relied upon it, if that briefing included any confidential information that he relied upon in making his guilty finding, the MDOC policy required that a summary be provided to the Petitioner.[2] It is unclear whether confidential information was contained in the S.I.I. briefing, or whether that information was necessary to support the hearing officer's finding of guilt. Without a complete copy of the record, there is no way for the court to know or even engage in any meaningful judicial review.

Lastly, Petitioner specifically requested, and was denied, access to the recordings of phone conversations. In his Summary of Hearing, the hearing officer made the following written notation: "The prisoner asked for the recordings of the phone conversation. I informed him that he won't be able to have or listen to the phone conversations." No further explanation was provided. MDOC Policy 20.1, Procs. C (9) & (10) state that the prisoner may be permitted to present or examine exhibits, that permission to do so shall not be unreasonably withheld or restricted, and that when permission is withheld or restricted, the hearing officer must document the reasons for withholding or restricting access to the evidence in the

---

[2] Petitioner believes that asterisks in Lt. Burnham's report cross-reference confidential information. There is no evidence of this, and nowhere is her use of asterisks explained. Upon reading the report, it is likely that the asterisks indicate the start of a new paragraph, date, or event.

8

written summary of hearing. Lt. Burnham's entire report was based on phone conversations that were recorded for the purposes of the investigation. Thus, the phone conversations were the cornerstone of the entire case against the Petitioner. Nevertheless, the Petitioner was denied access to them without any explanation by the hearing officer. Given the importance of the content of these recordings, it was particularly important that the hearing officer document the reason why the Petitioner was not allowed to listen to them, or why other alternative arrangements could not have been made, such as allowing staff counsel substitute to listen to them, which is what MDOC policy specifically contemplates. Policy 20.1, Proc. C(10).

Since the hearing officer did not comply with the applicable MDOC policies and procedures, the court cannot fulfil its obligation to conduct meaningful judicial review of the <u>entire</u> record when essential parts of the record are missing, and no explanation has been provided by the hearing officer for these deficiencies. The court may reverse an agency decision if it is unsupported by substantial evidence in the <u>whole</u> record or was made upon unlawful procedure, and remand to direct the agency to "hold such proceedings or take such action as the court deems necessary." 5 M.R.S. §11007(4).

9

## CONCLUSION

The entry is:

The Petition for Judicial Review is GRANTED and Disciplinary Matter No. MSP-2017-0478 is REVERSED and REMANDED to the Respondent with instructions to conduct a disciplinary hearing that complies with Prison Policies and Procedures.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: December 20, 2017

William R. Stokes
Justice, Maine Superior Court