929 P.2d 687

**STATE of Arizona, Appellee,**

v.

**Donald Edward PORTIS, Appellant.**

**Nos. 1 CA–CR 96–0225 to
1 CA–CR 96–0227.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 24, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Robert S. Golden, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

FIDEL, Judge.

Appellant Donald Edward Portis, a probationer, was expelled from a rehabilitation program for providing a urine sample containing traces of cocaine. The trial court then revoked Appellant's probation because Appellant had used cocaine and had failed to complete the rehabilitation program. Appellant, now in prison, appeals the revocation of his probation. Because the State failed to introduce reliable evidence to establish that a positive urine sample was taken from Appellant, we find that the State failed to meet its burden of proof.

## I. HISTORY

Appellant was on probation for a series of drug-related offenses[1] when his probation officer, Sue Sugar–James, filed a petition to revoke. The petition alleged that Appellant had violated two terms of his probation:

TERM # 9: The defendant, on or about December 11, 1995, did possess or use an illegal drug, to wit: cocaine, in violation of the law.

TERM # 11: The defendant failed to participate, cooperate in and successfully complete Salvation Army Adult Rehabilitation Program (residential) as directed by the supervising probation officer. (Mandatory).

A revocation hearing was convened. Sugar–James, the State's only witness, testified that she had been informed telephonically and in writing by Sunny Fritz, the intake coordinator for Appellant's rehabilitation program, that Appellant had tested positive for cocaine in a urinalysis and, as a result, had been terminated from the program. Sugar–James read a letter from George Staub, the director of the rehabilitation program, explaining standard urinalysis procedure:

All urines are collected, are witnessed by the resident manager or his or her staff. They label them with a label with the client's name and date of urine sample, which is attached to the bottle.

When the client is finished, he or she puts a lid on the bottle, which seals the bottle. The client is asked at the time to initial the label on the bottle. The sample is then taken to the lab, which is locked, and put in a refrigerator or run at that time.

This depends on the timing or the availability of the certified person who will run the test.

Sugar–James acknowledged, however, that neither Fritz nor Staub had supervised Appellant's urinalysis. Nor could either state from personal knowledge whether the standard procedure had been followed in Appellant's case. Staub knew only what was contained in a log record at the rehabilitation center.

Sugar–James added that the log record, according to Staub, identified a person named Jeffrey Brown as having supervised Appellant's urinalysis. However, neither Sugar–James nor Fritz nor Staub had spoken with Brown about Appellant's test. Further, Brown was out of state.

After Sugar–James had testified, the State rested, and Appellant's counsel moved to dismiss on the ground that the State had failed to prove by a preponderance of the evidence that Appellant had violated terms of his probation. The court observed that, although the State had established that a urine sample had tested positive for cocaine, the State had not shown that the sample came from Appellant.

After a brief recess, the court stated that Appellant's motion was well taken, but denied. Assessing the State as deficient in "showing that the urine sample was ... given by the defendant ... [a]nd placed into the normal routine and testing procedure," the court gave the State a continuance and an opportunity to reopen its case to attempt to meet its burden of proof.

When the revocation hearing resumed three days later, the State called Staub as its only witness. Staub testified that he had spoken with Brown over the telephone and had learned that Brown had not supervised the taking of Appellant's sample. In fact,

1. Appellant was convicted of conspiracy to sell narcotic drugs, a class two felony, possession of narcotic drugs, a class four felony, and sale of narcotic drugs, a class two felony.

Staub acknowledged, Brown may have been elsewhere when Appellant's sample was collected. Brown, according to Staub, said that one of his assistants had collected Appellant's sample, but did not recall the assistant's name. Brown told Staub, however, that the assistant had assured him that Appellant's sample was taken in compliance with standard procedure.

On cross-examination, Staub stated that all of Brown's assistants were recovering drug addicts. He also acknowledged that Brown did not recall whether the assistant who collected Appellant's sample had himself been terminated for "coming out dirty." Staub did not know how much time had passed or who had custody of the sample between its collection and the time Brown tested it.

After Staub's testimony, the State rested, and Appellant's counsel asked permission to move again to dismiss on the ground that the State had still not met its burden of proof. The court denied permission and, without further explanation, found that Appellant had violated the alleged terms of his probation.

At a subsequent disposition hearing, a different judge revoked Appellant's probation and sentenced him to concurrent prison terms. Appellant has timely appealed.

## II. REOPENING AND CONTINUANCE

Appellant first argues that the trial court erred by permitting the State, which had rested without adequately proving its allegations, to reopen for additional proof. We disagree.

Probation in Arizona is a matter of privilege, not of right. *See State v. Smith,* 112 Ariz. 416, 419, 542 P.2d 1115, 1118 (1975) ("Probation is a matter of legislative grace."). The judicial process in revocation hearings need not mirror the judicial process guaranteed to defendants in criminal trials; at a revocation hearing, a court possesses greater flexibility and is not bound by the same strict rules of evidence and procedure. *See id.* Here, the trial court articulated a sound reason for granting the State a reopening and a continuance to attempt to satisfy its burden of proof. Referring to a previous ruling, the court concluded that it had given the State

the false impression that it had met its burden of proof. The court concluded, "I believe it would be unfair of me, having made a ruling as I did earlier, to now make the ruling I'm going to make and in effect penalize the State." We find no abuse of discretion.

## III. RELIABLE EVIDENCE

Appellant next argues that the State's evidence was insufficient to establish that the tested urine sample came from him. We agree.

To establish a sufficient chain of "custody for physical evidence, the offering party must show continuity of possession." *State v. Jackson,* 170 Ariz. 89, 93, 821 P.2d 1374, 1378 (App.1991). This showing is especially necessary where the evidence involves narcotics because such evidence is vulnerable to alteration and substitution between collection and the test. *State v. Petralia,* 110 Ariz. 530, 536, 521 P.2d 617, 623 (1974).

The State failed to establish a reliable connection between the test results and the sample allegedly obtained from Appellant. Neither through first-hand knowledge nor reliable hearsay could either of the State's witnesses establish that the tested sample came from Appellant. The court initially recognized this weakness, asking, "[H]ow do we make the leap that this was the sample taken from the defendant?"

Though the court offered the State a continuance and a chance to cure the factual deficiency, the State fared no better the second time around. When the hearing resumed, the best evidence the State could provide was double hearsay. That is, Staub testified that Brown told Staub that a nameless assistant told Brown that he had collected Appellant's urine sample and placed it into the normal course of processing. This assistant, however, was a recovering drug addict who might himself have been terminated from the program for rendering a positive urine sample. *Cf. State v. Snider,* 172 Ariz. 163, 164, 835 P.2d 495, 496 (App.1992) (probation officer supervised taking of defendant's samples).

■ Although Arizona Rule of Criminal Procedure 27.7(b)(3), 17 A.R.S., permits the court at violation hearings to "receive any reliable evidence not legally privileged, including hearsay," Staub's testimony did not constitute reliable evidence. To be reliable as evidence, hearsay testimony in ∧violation hearings must be trustworthy. *State v. Stotts*, 144 Ariz. 72, 82, 695 P.2d 1110, 1120 (1985). To determine the trustworthiness of an out-of-court statement, courts consider whether the circumstances surrounding the statement provide a reasonable assurance of credibility. *Id.* Relevant factors include the identity of the out-of-court speaker and the level of that speaker on the hearsay ladder. *See Maricopa County Juvenile Action No. J–83341–S*, 119 Ariz. 178, 183, 580 P.2d 10, 15 (App.1978). Here the assertions originated with a nameless recovering drug addict and ended two hearsay levels later via the telephone. These circumstances do not warrant trust.

■ Because the State did not establish that the tested sample came from Appellant with reliable hearsay evidence, the State failed to meet its burden of proof. Therefore, the trial court erred by finding that Appellant used cocaine, in violation of term nine. The State argues that the trial court's revocation order was independently supported by Appellant's termination from the rehabilitation program—a violation of term eleven. But Appellant's termination, according to the evidence, was based entirely upon Fritz's belief that he had provided a positive sample; thus, both the term nine and term eleven violations rested upon the same inadequate evidentiary foundation.

For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

NOYES, P.J., and RYAN, J., concur.