2002 ME 86

**STATE of Maine**

v.

**John JAMES.**

No. Sag–01–628.

Supreme Judicial Court of Maine.

Argued: May 7, 2002.

Decided: May 29, 2002.

Geoffrey A. Rushlau, Dist. Atty., Patricia A. Mador, Asst. Dist. Atty., (orally), Bath, for State.

Mary A. Davis, Esq. (orally), Tisdale & Davis, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

1. 17–A M.R.S.A. § 401(1) (1983).

2. 17–A M.R.S.A. § 353(1) (1983).

3. Zipps was on vacation at the time the alleged probation violations occurred. She testified that she was notified by Probation

ALEXANDER, J.

[¶ 1] John James appeals from a judgment of the Superior Court (Sagadahoc County, *Field, J.*) revoking James's probation and ordering that he serve the remaining term of his underlying sentence. James contends that the court's consideration of multi-level hearsay evidence violated his due process right to confront and cross-examine adverse witnesses. We agree and vacate the judgment.

## I. CASE HISTORY

[¶ 2] On June 15, 1998, John James was convicted of Class C burglary [1] and theft,[2] and sentenced in the Superior Court (*Atwood, J.*) to the Department of Corrections for a term of five years, with all but six months suspended. The Superior Court also ordered that James be placed on probation for a term of three years, with conditions, including requirements that he refrain from criminal conduct and the possession or use of alcohol.

[¶ 3] A motion to revoke James's probation was filed by Probation Officer Anthony Trodello on October 12, 2000, alleging that James violated the terms of his probation on August 16, 2000, by (1) committing the offense of criminal mischief, and (2) having a blood-alcohol content of 0.11% or more.

[¶ 4] At the September 26, 2001 probation revocation hearing, the State presented only the testimony of Corinne Zipps, James's assigned Probation Officer, in support of the revocation.[3] Zipps testified that she spoke several times with James's

Officer Trodello when she returned from her vacation in September of 2000 that James allegedly violated the conditions of his probation by engaging in new criminal conduct and consuming alcohol, and that a motion to revoke probation had been filed.

arresting officer, Officer Paul Cox of the Windham Police Department, as part of her investigation of the allegations. Officer Cox relayed to Zipps that the Windham police had been summonsed to a campground by James's girlfriend, who called from a local store to report that James had "threatened her, smashed out her windshield and started to tear up their tent when she attempted to leave." James's girlfriend told the police that James got on the hood of her vehicle when she attempted to leave but fell off when she increased her speed.

[¶ 5] Zipps never spoke directly with James or his girlfriend about the alleged incident. In the record, it is unclear whether Officer Cox spoke directly with James's girlfriend or whether another Windham officer spoke with her and then advised Cox of her statements. Zipps testified that the resulting criminal mischief charge was dismissed by the Cumberland County District Attorney's Office on August 15, 2001, more than a month before the probation violation hearing, due to a lack of cooperation by the victim.

[¶ 6] Officer Cox also told Zipps that he administered an intoxilizer test at the time of James's arrest. Zipps testified that she "believed" the result of the test was a 0.11% blood-alcohol concentration.[4] No blood-alcohol test was marked as an exhibit or admitted by the court at the probation violation hearing. When asked whether Cox was trained to administer the breath alcohol apparatus, Zipps replied, "I believe all of the Windham officers are trained, except for the newest ones, and are certified."

[¶ 7] The defense objected to Zipps's hearsay testimony on the grounds that it violated James's due process right to confront witnesses. Specifically, the defense objected to Zipps's testimony regarding the content of her conversations with Probation Officer Trodello and Officer Cox as well as Zipps's testimony regarding her beliefs about the contents of the intoxilizer report. The court overruled each of the objections, noting that the evidence presented "a pure hearsay problem," and not a problem regarding the defendant's due process rights.

[¶ 8] The Superior Court found by a preponderance of the evidence that John James committed criminal mischief and consumed intoxicating liquor in violation of the conditions of his probation. The court then ordered James to serve the remainder of his underlying sentence, approximately four years, and terminated his probation. This appeal followed.

## II. DISCUSSION

[¶ 9] Hearings on motions to revoke probation are governed by 17–A M.R.S.A. § 1206 (Supp.2001). Upon motion, the trial court may revoke probation if the State proves, by a preponderance of the evidence, that (1) the probationer "inexcusably failed to comply with a requirement imposed as a condition of probation," or (2) the probationer committed a crime, if the alleged violation constitutes a crime. *Id.* § 1206(5)-(6); *see also State v. Walker*, 675 A.2d 499, 501 (Me.1996) (burden of persuasion in probation revocation hearing rests with prosecution). James contends that the evidence presented by the State, consisting solely of Probation Officer Zipps's hearsay testimony regarding (1) her conversations with Officer Cox as to the content of the alleged victim's statements to the Windham police, and (2) her beliefs

---

4. Although it can be inferred from Zipps's testimony that she was looking at a document when she spoke about the blood-alcohol level, it is not clear what the document was. It was neither described to the court, nor offered into evidence.

about the results of James's blood-alcohol test, violated his due process right to confront and cross-examine witnesses because that testimony was unreliable, "unreasonably abundant" hearsay.

[¶ 10] A probation revocation hearing is not considered a stage in the criminal process and, therefore, "the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (applying *Morrissey* to probation revocation hearings); *State v. Caron*, 334 A.2d 495, 497–98 (Me.1975) (importing *Gagnon* into Maine law).

[¶ 11] The United States Supreme Court has held that such hearings "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593; *see also Gagnon*, 411 U.S. at 782 n. 5, 93 S.Ct. 1756 ("While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence."). Accordingly, the Maine Rules of Evidence do not apply to probation revocation hearings. M.R. Evid. 1101(b)(4).[5]

[¶ 12] Because revocation hearings have the potential to deprive persons of their liberty, however, minimum guarantees of due process[6] are necessary. *Caron*, 334 A.2d at 497. Among those guarantees is the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Gagnon*, 411 U.S. at 786, 93 S.Ct. 1756; *see also* 17–A M.R.S.A. § 1206(4).[7] As reflected by prior cases,[8] which have fo-

---

5. Maine Rule of Evidence 1101(b) provides, in relevant part:

    (b) Rules Inapplicable. The rules other than those with respect to privileges do not apply in the following situations:

    . . . .

    (4) *Miscellaneous Proceedings.* Statutory small claims proceedings in the District Court prior to the rendition of judgment; proceedings for sentencing; issuance of warrants; proceedings with respect to release on bail or otherwise; proceedings for granting of probation or parole; proceedings on probation or parole violations; and proceedings for determination of probable cause.

6. Article I, section 6–A of the Maine Constitution provides: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof." Me. Const. art. I, § 6–A. *See also* U.S. Const. amend. XIV.

7. Section 1206(4), a codification of the right to confront, provides: "If a hearing is held, the person on probation must be afforded the opportunity to confront and cross-examine witnesses against the person . . . ."

8. *See, e.g., State v. Rameau*, 685 A.2d 761, 765 (Me.1996) (holding proper the admission of the victim's trial testimony at the later revocation hearing because cross-examination of the victim at trial provided a good measure of reliability); *State v. Labbe*, 617 A.2d 1023, 1025 (Me.1992) (finding letter from defendant's counselor as well as probation officer's testimony regarding her conversations with the counselor not highly suspect because corroborated by defendant's prior admissions and his testimony at the probation violation hearing); *Ingerson v. State*, 491 A.2d 1176, 1181 (Me.1985) (holding police officer's hearsay testimony as to statements made by victim soon after alleged rape properly considered because the hearsay was not unreasonably abundant or highly suspect and the parolee had the ability to cross-examine hearsay declarant about those statements

cused only upon the reliability of proffered hearsay and have never required an explanation for the declarant's˚ absence, the need to show good cause vanishes "if the proffered evidence itself bears substantial guarantees of trustworthiness."[9] *Egerstaffer v. Israel,* 726 F.2d 1231, 1234 (7th Cir.1984).

▪▪▪ [¶ 13] The testimony presented in James's revocation hearing was inadmissible multi-level hearsay under the rules of evidence because none of the combined statements fall within an exception to the hearsay rule. *See* M.R. Evid. 805.[10] Although Zipps's testimony was the sole evidence presented in support of the alleged probation violation, that fact alone does not indicate that James was denied due process. As we stated in *State v. Caron,* 334 A.2d at 498, the use of hearsay evidence is "per se, consistent with constitutional fundamental fairness 'due process' guarantees as applicable to a proceeding to revoke a probation." It is only when the hearsay is "unreasonably abundant and its substantive reliability highly suspect," that a decision resting upon such evidence will violate due process. *Id. Cf. State v. Whitten,* 667 A.2d 849, 852 (Me.1995) (finding due process violation in sentencing pro-

ceeding where trial court considered hearsay writing without taking steps to ensure its factual reliability);[11] *Heal v. Maine Employment Sec. Comm'n,* 447 A.2d 1223, 1226 (Me.1982) (finding due process violation where the Commission considered two hearsay documents that had no "assurance of reliability").[12] Whether the admission of Zipps's hearsay testimony violated James's due process right to confrontation therefore turns upon whether that evidence was inherently reliable.

[¶ 14] The first step in analyzing the reliability of proffered evidence is to determine whether the evidence would be admissible under the rules of evidence; that is, whether the evidence is excluded from hearsay under the rules or falls within a firmly rooted hearsay exception. *Bailey v. State,* 327 Md. 689, 612 A.2d 288, 292 (1992); *Commonwealth v. Durling,* 407 Mass. 108, 551 N.E.2d 1193, 1198 (1990); *State v. Purkett,* 825 S.W.2d 851, 856 (Mo. 1992). This is the first step because "[e]vidence which would be admissible under standard evidentiary rules is presumptively reliable." *Durling,* 551 N.E.2d at 1198; *cf. Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("Relia-

---

when she testified); *Caron,* 334 A.2d at 498 (permitting police testimony relating to victims' identification of property stolen by defendant without requiring State to explain victims' absence because use of hearsay was minimal and testimony was reliable).

**9.** Other jurisdictions apply a balancing test, "weighing the reasons for the government's failure to produce the declarant and the reliability of the hearsay evidence." WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 26.10(c) (1999).

**10.** M.R. Evid. 805 provides: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

**11.** As with probation violation hearings, sentencing proceedings are not subject to the Maine Rules of Evidence. M.R. Evid. 1101(b)(4). To protect a defendant's right to due process, a trial court may only consider allegations of uncharged criminal conduct after taking steps to ensure the evidence is factually reliable. *Whitten,* 667 A.2d at 852.

**12.** Administrative agencies "need not observe the rules of evidence observed by courts." 5 M.R.S.A. § 9057(1) (2002). Hearsay evidence may be admitted in an administrative hearing, however, only if "it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs," meaning that its reliability is assured. *Id.* § 9057(2); *see also Heal,* 447 A.2d at 1226.

bility can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception."). Zipps's hearsay testimony regarding the content of the alleged victim's statements to the Windham police as well as Zipps's belief as to the blood-alcohol test results is not entitled to a presumption of reliability because neither of those portions of testimony falls within a firmly rooted hearsay exception or is excluded from hearsay under the rules of evidence. *See* M.R. Evid. 801(d), 803.

[¶ 15] When the proffered evidence would not be admissible under the rules of evidence, its reliability must be independently examined. *Durling*, 551 N.E.2d at 1198. A variety of factors may be considered at this level of analysis, including: (1) whether the hearsay evidence is corroborated, in whole or part, by live testimony presented at the probation violation hearing or an admission by the probationer, *see Labbe*, 617 A.2d at 1025 (finding corroboration in defendant's admission to probation officer as well as his testimony at the revocation hearing); *State v. Casiano*, 667 A.2d 1233, 1240 (R.I.1995) (concluding hearsay testimony relating child victim's statements sufficiently corroborated because defendant admitted striking the child with a belt and medical experts testified the child's bruises were consistent with being struck by a belt); (2) the source of the hearsay, including the potential for bias or motive to fabricate, *Bailey*, 612 A.2d at 293–94 (concluding source of hearsay letter, a structured half-way house, was reliable because the half-way house was required to report non-compliance with probation conditions to the court); and (3) whether the hearsay evidence is sufficiently detailed, *Egerstaffer*, 726 F.2d at 1235 (determining tape recording of hearsay declarant's interview to contain sufficient indicia of reliability in part because declarant gave a reasonably detailed

account of the events); *Durling*, 551 N.E.2d at 1201 (finding police reports sufficiently reliable because they related facts observed by the police officers personally and were factually detailed, as opposed to general statements or conclusions).

[¶ 16] The State's evidence regarding the alleged victim's statements to the Windham police does not contain any of the typical guarantees of reliability. Although Zipps herself may have been a credible witness, the information she was relaying came from essentially unspecified sources. The State did not present any corroborating evidence, in the form of live testimony or an admission by James, to establish the reliability of James's girlfriend's reported statements to the Windham police or to guarantee the reliability of Officer Cox's statements. There was no testimony that Officer Cox personally observed the smashed windshield or torn tent. Additionally, James's girlfriend, the source of the hearsay, may have had reason to fabricate the incident, and her failure to later cooperate with the criminal prosecution makes the reliability of the reports of her statement all the more difficult to judge.

[¶ 17] Zipps's hearsay testimony regarding the blood-alcohol test result also does not contain any guarantees of trustworthiness. The blood-alcohol test result is not corroborated by any live testimony, such as testimony by Officer Cox that he smelled alcohol on James's breath or observed any impairment typically associated with alcohol consumption. Nor was any corroborating evidence in the form of other hearsay presented to the court, such as a statement by the alleged victim that James consumed alcohol. *See State v. Finch*, 153 Vt. 216, 569 A.2d 494, 495 (1989) (finding reliability where evidence

from two hearsay sources was consistent and mutually supportive).

[¶ 18] It is also unclear whether the source of the hearsay was Officer Cox, or a document such as a printout from an intoxilizer or certified results of a blood-alcohol test. Finally, Zipps herself undermines the reliability of the test results because she testified only that she "believed" the police obtained a 0.11% blood-alcohol test result and that she "believed" that all of the Windham police officers are trained and certified in the use of intoxilizer machines.

[¶ 19] Because Officer Zipps's testimony does not contain sufficient indicia of reliability and was the only evidence presented by the State, the Superior Court erred in relying upon such evidence to find violations of James's conditions of probation.[13]

The entry is:

Judgment vacated.

---

**13.** This conclusion is consistent with the determination made by other courts that have analyzed double hearsay in the context of probation revocation hearings. *See, e.g., United States v. Perkins,* Nos. 00–4540, 00–7003, 2001 WL 431538, at *2 (4th Cir. Apr.27, 2001) (finding unreliable a probation officer's letter stating that the director of the probationer's group home reported to the officer that the probationer left without authorization); *United States v. Bell,* 785 F.2d 640, 644–45 (8th Cir.1986) (finding unreliable probation officer's testimony regarding his conversations with investigating officers and a third party, an FBI agent who was not personally involved in the investigation of the defendant); *State v. Portis,* 187 Ariz. 336, 929 P.2d 687, 689–90 (Ct.App.1996) (rehabilitation program director's testimony that urinalysis supervisor stated that his assistant administered the urine test and assured the supervisor that it was in compliance with standard procedure was unreliable double hearsay); *Anaya v. State,* 96 Nev. 119, 606 P.2d 156, 159 (1980) (finding due process violation where probation officer's testimony summarized the contents of an arrest report, which was not introduced into evidence, and the arresting officers did not testify because the court had no "means of testing the accuracy or reliability of the facts recited in the report itself or of the probation officer's recollection of them"); *State v. Mingua,* 42 Ohio App.2d 35, 327 N.E.2d 791, 795 (1974) (admission of double hearsay consisting of probation officer's testimony that probationer's sister-in-law informed the officer that neighbors in the community were accusing probationer of committing a crime violated due process).