MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 231
Docket:      Ken-17-110
Argued:      November 14, 2017
Decided:     December 12, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

CORY D. KIBBE

PER CURIAM

[¶1]   In 2004, Cory D. Kibbe pleaded guilty to gross sexual assault (Class A), 17-A M.R.S. § 253(1)(B) (2016), and unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E) (2016).  The Superior Court (Kennebec County, *Clifford, J.*) sentenced Kibbe to twenty years in prison with all but four years suspended and eight years of probation for the gross sexual assault, and to four years in prison, to run concurrently, for the unlawful sexual contact.

[¶2]  Kibbe served his sentence and, thirteen years later, in 2017, after a testimonial hearing, the court (*Nale, J.*) ordered Kibbe to spend four years in prison after granting the State's motion to revoke Kibbe's probation on the grounds that Kibbe failed to report to his probation officer as required on two occasions and "walk[ed] in front of the Waterville public school."  We now

2

consider the sufficiency of the evidence supporting the court's revocation of Kibbe's probation.[1]

[¶3]  As applies to this matter, probation may be revoked when "the alleged violation does not constitute a crime and the court finds by a preponderance of the evidence that the person [who is on probation] has inexcusably failed to comply with a requirement imposed as a condition of probation."  17-A M.R.S. § 1206(6) (2016).  It is the State's burden to establish these elements.  *State v. James*, 2002 ME 86, ¶ 9, 797 A.2d 732.  Kibbe challenges only the determination that he was still on probation at the time of his alleged probation violations.

[¶4]  Notwithstanding the deferential standard by which we review the sufficiency of the evidence supporting such a factual finding—clear error—we conclude in this matter that the State failed to meet its burden.  *See State v. Palmer*, 2016 ME 120, ¶ 11, 145 A.3d 561.  Our conclusion is perhaps best demonstrated by a summary of what occurred during the hearing.

[¶5]   The State presented one witness at the hearing—Kibbe's probation officer.  On direct examination by the State, the probation officer

---

[1] We granted Kibbe a certificate of probable cause on his petition seeking discretionary review of the court's decision.  *See* 17-A M.R.S. § 1207(1) (2016); M.R. App. P. 19(a)(ii) (Tower 2016); M.R. App. P. 19(a)(2)(B).

testified that Kibbe was seen in front of a Waterville public school on August 30, 2016, at a time when school was not in session, in violation of a probation condition that he not be within five hundred feet of a school, and that Kibbe had failed to report to her as required on September 22, 2016; September 26, 2016; and October 6, 2016, for which he was arrested on October 6, 2016. The State's attorney did not ask the probation officer during direct examination if Kibbe was still on probation on these dates, and the probation officer did not testify on that issue.

[¶6] On cross-examination, Kibbe's attorney questioned the probation officer regarding whether Kibbe was on probation at the time of the alleged violations:

Q      So I have a date of December 16th of 2007 of Mr. Kibbe's release that was provided to me by the Department of Corrections. But is it correct that you're not sure when he was originally released?

A      I don't have that date off the top of my head.

Q      So you -- as you sit here today, you believe that Mr. Kibbe is still on probation though, correct?

A      Yes.

Q      And he's -- was subject to eight years of probation?

A      That's possible.

4

Q      You're not sure how many years of probation?

A      I don't.  I only have a hunch.

Q      It's eight years.  I think we can probably agree that it's eight years.  Can we agree that it's eight years of probation?

A      Yes.

When asked when Kibbe was released from prison after serving the unsuspended portion of his sentence, the probation officer testified, "I -- I don't have it off the top of my head.  No, I didn't bring that with me."  After Kibbe's attorney suggested that Kibbe was released from prison on December 16, 2007, the probation officer agreed that his probation commenced on December 17, 2007, and that, barring other factors, Kibbe's eight-year probation term therefore would have expired in December of 2015, several months before the dates of the alleged probation violations:

A      . . . . His probation did start December 17th, 2007.

      THE COURT:      Probation would begin when?

      THE WITNESS:   December 17th, 2007.

      THE COURT:      December 17th?

      THE WITNESS:   December 17th, 2007.

      THE COURT:      Thank you.  And that would run for eight years?

THE WITNESS:   Yes.

[¶7]  Although the probation officer testified on cross-examination that Kibbe was subject to prior partial probation revocations of 440 days and six months, she also testified that she was not sure how long Kibbe's probation was tolled while he served time on those prior revocations, or whether and to what extent he received good time credits that would reduce the tolled period. *See* 17-A M.R.S. §§ 1206(7-A), 1253(8)(A), (D) (2016).  The probation officer agreed that good time credits would affect the probation tolling dates, but when Kibbe's attorney inquired, "The problem is, you're not sure when it was tolled for those, correct?" the probation officer answered, "I don't have that on me, no."  When asked, "So at this point, you don't actually have any records with you for the Court to show that Mr. Kibbe was on probation on October 6th?" the probation officer responded, "No, I don't have that with me. I'm sure I can make a phone call and get all the tolling dates."

[¶8]  On redirect examination, the probation officer testified that Kibbe's prior probation revocations would have extended his probationary period by nineteen months from the initial end of his probation in December of 2015, and that she did not receive a notification from the Department of Corrections flagging system informing her that Kibbe's probation had ended.

6

[¶9] On recross-examination, Kibbe's attorney inquired further into the effect of the prior probation revocations:

Q    This whole tolling, I mean, you were led through a bunch of questions here on tolling but the bottom line is, you mentioned 440 days. You don't know that Mr. Kibbe was actually -- his probation was tolled for 440 days, correct?

A    No. I can probably get some dates, if you'd like.

Q    But for all you know here today, he could have been sentenced to 440 days, got a significant amount of good time and been released long before that 440 days, correct?

A    I don't know what the good time would have been on it.

The State rested without offering any additional evidence.[2]

[¶10] In short, the record makes clear that the State's single witness—Kibbe's probation officer—was unable to testify with *any* degree of certainty that Kibbe was still on probation on October 6, 2016. She had neither knowledge of nor information about the actual dates of Kibbe's probation.[3]

---

[2] While it was considering what disposition to impose for the probation violation, the court took a recess, after which the State's attorney indicated, "We've also confirmed with the Department of Corrections that [Kibbe] would, barring any further time in, remain on probation through September of next year." To the extent that such vague information could have aided the court in its findings, the court had already found that Kibbe violated his probation by the time the State purported to obtain confirmation from the Department of Corrections, and in any event, the statements of an attorney are not evidence, *see State v. Begin*, 2015 ME 86, ¶ 28, 120 A.3d 97.

[3] Moreover, we cannot be certain that the court correctly assigned the burden of proof to the State throughout the hearing. *See State v. James*, 2002 ME 86, ¶ 9, 797 A.2d 732. After Kibbe's attorney asked the probation officer on cross-examination, "Do you have any evidence that [Kibbe] was on probation at that time?" the court inquired of Kibbe's attorney, "Do you have any evidence that he was not on probation?" Later, after Kibbe's attorney challenged during closing argument

*See* 17-A M.R.S. § 1253(8)(A), (D). It was the State's burden to prove, by a preponderance of the evidence, that Kibbe was on probation at the time of his alleged probation violations; the State failed to meet that burden.[4] *See* 17-A M.R.S. § 1206(6); *James*, 2002 ME 86, ¶ 9, 797 A.2d 732. Accordingly, we vacate the judgment revoking Kibbe's probation.[5]

The entry is:

> Judgment vacated. Remanded for entry of an order denying the State's probation revocation motion.

---

the State's proof that Kibbe was on probation at the relevant time, the court stated, "How do I know he wasn't? See, that's the -- I think we're taking -- looking at this the wrong way, in my eyes. I'm here and I'm -- someone needs to convince me that he is -- was not on probation." When Kibbe's attorney asked, "Well, Your Honor, are you suggesting that the defendant has the burden of proof --," the court stated, "I'm not suggesting that. I'm not suggesting that one bit. I'm saying, it's [the State's] burden. And what I've heard from the district attorney's office, I'm convinced that he was on probation."

[4] To prevent such failures in calculating probationary periods in future matters—particularly those in which there is a serious question as to whether the probationer is still on probation—the State and the State's witness must be prepared to establish that probation is, in fact, still in effect. The better practice is for the State to file documentation with its motion to revoke probation detailing the relevant dates.

[5] We decline the parties' alternative request to remand the matter for a new hearing. Having failed to meet its burden, there is no basis upon which to allow the State a second attempt to prove those facts.

Kevin P. Sullivan, Esq. (orally), Sullivan Law, P.C., Augusta, for appellant Cory D. Kibbe

Maeghan Maloney, District Attorney, and Michael H. Madigan, Asst. Dist. Atty. (orally), Prosecutorial District No. Four, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CR-2004-357
FOR CLERK REFERENCE ONLY