STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss                                      CIVIL ACTION
                                                  DOCKET NO. AP-19-01


STACEY PALMER,

        Petitioner

v.                                          **DECISION AND ORDER**
                                               (M.R.Civ.P. 80C)


MAINE STATE BOARD
OF NURSING,
        Respondent


Before the court is Petitioner Stacey Palmer's (Palmer) M.R. Civ. P. 80C Appeal of Final Agency Action against the Maine State Board of Nursing (Board). For the reasons explained below, the court finds that Palmer's Rule 80C appeal should be denied.

## I.   Background

The following facts are based on the Certified Administrative Record (R), and the findings of fact made by the Board in its Decision and Order that is under review. Palmer is a registered nurse, or RN, licensed to practice in Maine. (R. 23.) Palmer was employed as a contract nurse by All Med Staffing of New England and was assigned to work at Glenridge, an Alzheimer and dementia specialized division of Maine General Health. (R. 21; 28.) On August 6, 2017, Palmer responded to a call from a patient's ("DH") room. (R. 28.) DH had been ringing the nurses' bell and Palmer told him to visit the nurses' station instead, if he needed assistance. (R. 24, 28.) According to Palmer, DH became defensive, raised his voice, and threatened her with physical violence. (R. 28.) Palmer raised her voice to be heard over DH. (R. 28.) Palmer returned to the nurses' station and shortly thereafter, DH approached

1

the station to request a phone. (R. 29.) DH and Palmer again raised their voices. (R. 24, 29.) CNA Grace Thomas (Thomas) witnessed the interaction, and testified that Palmer "was screaming at the resident" and that Palmer's "body mechanics were very threatening." (R. 91, 93.) Palmer contradicted Thomas' version of the events and testified that she did not yell at the patient. (R. 238-39.)

Palmer denied getting out of her seat, but Thomas testified that she had to step between Palmer and the resident. (R. 24, 29, 91-92.) Thomas does not recall the actual words exchanged between Palmer and the patient, but she testified a second time that Palmer "was definitely screaming." (R. 92, 106)) A supervisor was called to intervene, as the patient returned to his room. The supervisor did not intervene at the time, but questioned those involved approximately an hour after the incident. (R. 38.) April Feltis, Clinical Nursing Supervisor, investigated the incident by interviewing witnesses and writing summaries of the interviews. (R. 24-25, 126-28.)

On September 22, 2017, Palmer was notified of a report filed against her by All Med Staffing. (R. 21.) The Notice of Complaint stated that the reported incident of Palmer yelling at a resident/patient was a possible violation of professional conduct or other Board rules, 32 M.R.S. §§ 2105-A (2)(F), (2)(H).[1] (R. 21.) The Notice of Hearing and Second Amended Notice of Hearing, sent on June 21, 2018, and September 21, 2018, cited possible violations of: (1) a rule adopted by the Board for engaging in behavior that exceeded professional boundaries, Board Rules Ch. 4

---

[1] 2(F). Unprofessional Conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed. 32 M.R.S. § 2105-A (2)(F). 2(H). A licensee is also subject to discipline for a violation of the State law governing the licensing of nurse or a rule adopted by the board. 32 M.R.S. § 2105-A(2)(H)

2

§ 3(U), and; (2) a standard of professional behavior, Provision 1 of the American Nurses Associations' Code of Ethics.[2] (R. 18, 428.)

The State filed proposed exhibits on July 9, 2018, pursuant to a July 1, 2018 Scheduling Order. (R. 424, 426.) Palmer's counsel requested a continuance on July 10, 2018. (R. 420-21.) The hearing was continued to September 19, 2018, and the State provided Palmer with its witness list and proposed exhibits on August 22, 2018. (R. 415-17.) Pursuant to a Continuance Order dated September 19, 2018, proposed exhibits, witnesses, and Palmer's objections to the State's exhibits were to be filed by September 27, 2018. (R. 415.) On September 27, 2018, Palmer identified several character witnesses and reserved the right to use the State's witnesses and exhibits. (R. 410.) Palmer did not object to any State exhibits or witnesses. (R. 410.)

The Board conducted the first day of the hearing on October 4, 2018. (R. 70.) Grace Thomas and April Feltis testified, were cross-examined, and were dismissed. (R. 85-206.) The hearing was continued due to an illness, apparently of Palmer's attorney. (R. 225-26, 378.) On October 6, 2018, Palmer's counsel requested six subpoenas for documents. (R. 406-08.) The State objected and Palmer filed a response to the State's objections. (R. 389, 401.) On October 15, 2018, an electronically signed subpoena was sent via email to Palmer's counsel. (R. 367.) In an Order on Subpoenas dated October 25, 2018, the Hearing Officer denied the remaining subpoena requests. (R. 378) In a detailed written Evidentiary Order dated October 29, 2018 the Hearing Officer allowed two of Palmer's exhibits and one identified witness. (R. 372.)

---

[2] 3(U) Engaging in behavior that exceeds professional boundaries including, but not limited to, sexual misconduct. Board Rules Ch. 4 § 3(U). The nurse practices with compassion and respect for the inherent dignity, worth, and unique attributes of every person. Provision 1 of the American Nurses Associations' Code of Ethics.

The Board conducted the final day of the hearing on November 1, 2018. (R. 209.) Palmer's counsel moved for a "mis-hearing" and argued the motion after the Hearing Officer had turned off the recording device to clarify the order of the hearing. (R. 217-19.) Palmer's counsel also accused the Acting Board Chair of "huffing and puffing," and moved that the Acting Board Chair and the Hearing Officer both recuse themselves. (R. 217, 225.) The Hearing Officer denied the oral motions. (R. 229-30.) The Acting Board Chair did not recuse herself because she "could continue to preside over the hearing in a fair and impartial manner." (R. 229.)

Palmer testified, was cross-examined, and was dismissed as a witness on November 1, 2018. (R. 209.) At the close of the evidence, Palmer moved to dismiss the allegations, which the Board voted to deny after argument. (R. 323-27.) After closing arguments, the Board began deliberations, but paused to ask Palmer some additional questions. (R. 347.) When deliberations resumed, a majority of the Board voted to find that Palmer had violated 32 M.R.S. 2105-A(2)(F) & (H) and Board Rules Ch. 4 § 3(U). (R. 151.) The Board issued a warning and imposed a one-year probation requiring Palmer to provide any nursing employer a copy of the Decision and Order, submit quarterly reports from a nursing employer, and complete two courses. (R. 16-17.) The Board issued its written decision on December 6, 2018. (R. 17.)

On January 7, 2019, Palmer filed an appeal from the Board's decision pursuant to M.R. Civ. P. 80C, alleging that the Board's action was biased and violated constitutional protections including her rights to due process and freedom of speech.[3]

---

[3] After the parties had filed their respective briefs in this Rule 80C appeal, Palmer sought leave to file an amended complaint adding independent claims. The court denied the motion on June 3, 2019.

## II.    Standard of Review

The court reviews the Board's decision for abuse of discretion, error of law, or findings not supported by substantial evidence in the record. *Connolly v. Board of Social Work Licensure*, 2002 ME 37, ¶ 6, 791 A.2d 125. "The court's review is limited to determining whether the agency's conclusions are unreasonable, unjust, or unlawful in light of the record." *Imagineering v. Department of Professional & Financial Regulation*, 593 A.2d 1050, 1053 (Me. 1991). The court will sustain the administrative decision if, "on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. The party seeking to vacate the agency's decision bears the burden of proving that no competent evidence exists to support the agency's decision. *Id.* Upon judicial review, the court's role is to "determine whether the Board applied the law correctly and whether it exceeded the bounds of its discretion." *Lippitt v. Bd. of Certification for Geologists and Soil Scientists*, 2014 ME 42, ¶ 16, 88 A.3d 154. "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id.*

## III.    Discussion

### 1. Abuse of Discretion Claims

Palmer argues that the Board abused its discretion by admitting and relying upon Ms. Feltis's testimony and report because it constituted hearsay and double hearsay. The State asserts that Palmer did not preserve this issue for appeal because she did not object to the State's exhibits or witnesses. "Plaintiffs in a Rule 80C proceeding for review of final agency action are expected to raise any objections they have before the agency in order to preserve these issues for appeal." *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 24, 39 A.3d 74

5

(internal citation omitted). While Palmer did not object to the State's exhibits or witness testimony, she did object to the State's questioning of Ms. Feltis on the basis of hearsay during the hearing. (R. 131.) The Hearing Officer ruled that the testimony, although containing hearsay, was admissible because it was reasonable. (R. 131.)

The standard for the admission of evidence in administrative hearings is whether the "evidence is the kind upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 5 M.R.S. § 9057(2); *see Keller v. Maine Unemployment Ins. Comm'n*, 477 A.2d 1159, 1161 (Me. 1984) ("Maine Rules of Evidence do not apply in administrative hearings."). While the Law Court has found that double hearsay did not satisfy the evidentiary standard for administrative proceedings if not corroborated by additional evidence, *Keller* at 1161, the Court has also emphasized that the reliability of hearsay is the determinative factor for assessing reasonableness. *Dowling v. Bangor Housing Auth.*, 2006 ME 136, ¶ 32, 910 A.2d 376. In determining the reliability of hearsay for an administrative proceeding, the court considers "whether the hearsay evidence is corroborated, in whole or part, by live testimony presented at the hearing or an admission; the source of the hearsay, including the potential for bias or motive to fabricate; and whether the hearsay evidence is sufficiently detailed." *Id.* at ¶ 33 (quoting *State v. James*, 2002 ME 86, ¶ 15, 797 A.2d 732) (internal quotations omitted). The Hearing Officer did not abuse her discretion in admitting hearsay because its reliability was established by corroborating evidence, including handwritten accounts of the event, notes taken during Ms. Feltis's investigation, the live testimony of Ms. Feltis and Ms. Thomas, and the sources of the hearsay were identified.

Palmer next contends that the Board abused its discretion by denying her subpoenas. She claims that the Board, through the Hearing Officer, used a "reasonable directness" standard, denied subpoenas on the ground of untimeliness,

6

and did not comply with Maine Rules of Civil Procedure in serving subpoenas. 5 M.R.S. § 9060(1). Palmer's arguments are without merit.

The subpoenas requested by Palmer sought "all notes, memos, records, research, statements, copies of records reviewed, and all other material related to the investigation of D.H, . . . Terri Stone, R.N., a supervisor in the facility, . . . and Ms. Thomas." (R. 379) Another subpoena sought "all medical records, mental health records, employment records, workers' compensation records, civil litigation records, criminal litigation records, human rights and/or discrimination records, and disability records from January 1, 2007, to the present," for Ms. Thomas. *Id.* Finally, Palmer sought extensive access into the medical records of the patient, DH.

The Hearing Officer issued an order dated October 25, 2018, in which she concluded that the subpoenas in question were not "related with reasonable directness" to any issue of fact in the proceeding before the Board. (R. 380). Moreover, the Hearing Officer determined that Palmer's request for subpoenas was untimely because they were submitted after the first day of the hearing and well after the deadlines set by the Board.

Palmer claims that the Hearing Officer "made up" a "reasonable directness" standard that does not exist in the law. *Pet's Brief at 9-10.* Title 5 M.R.S. § 9060(1)(C) is the source of the reasonable directness standard utilized by the Hearing Officer. Section 9060(1) provides that a party "shall be entitled as of right" to the issuance of subpoenas for the production of "evidence relating to any issue of fact in the proceeding." In attempting to determine whether a particular subpoena sought evidence "relating to any issue of fact in the proceeding," the hearing officer was guided by the language of section 9060(1)(C), which permits an agency to vacate or modify a subpoena, upon the petition of a witness, if the testimony or evidence sought "does not relate with reasonable directness to any matter in question."

7

The Hearing Officer did not "make up" or invent the reasonable directness standard as alleged by Palmer. "Reasonable directness" is the standard to determine whether the sought for evidence is sufficiently "related" to an issue of fact in the proceeding. The Board did not commit error by evaluating Palmer's subpoena requests for "reasonable directness."

Furthermore, the Board did not abuse its discretion by denying the requested subpoenas because they were overbroad, unreasonably "wide-ranging," and immaterial to the issues of fact in the case. Stated otherwise, in denying the subpoenas the Board did not "exceed the bounds of reasonable choices available to it." *Lippitt v. Bd. of Certification for Geologists and Soil Scientists*, 2014 ME 42, ¶ 16, 88 A.3d 154; *see also Taylor v. Public Utilities Comm'n*, 2016 ME 71, ¶ 5 n.4, 138 A.3d 1214 (denying subpoenas was not an abuse of discretion). [4]

Finally, Palmer's claim that the Board committed error in its handling of the subpoenas it did allow, has no merit. Nothing in the Maine Rules of Civil Procedure or the Administrative Procedure Act requires an agency to serve subpoenas for a party. It was Palmer's responsibility, not the Board's, to follow through on the service of any subpoenas.

On November 1, 2018, the Hearing Officer called the second day of the hearing to order. The State called Ms. Palmer as its first witness of the afternoon. As Palmer's direct examination was in progress, her counsel interrupted to ask whether the "agreed-up evidence," i.e., the stipulation, had been provided to the Board members. (R., 215). Apparently, there was a disagreement between the Hearing Officer and Palmer's counsel as to the timing of informing the Board members of the stipulation. It is apparent to the court from reading the transcript of

---

[4] Palmer has also complained that she was not provided discovery. Once again, this claim lacks merit. The court has scrutinized the entire administrative record and is satisfied that Palmer was provided with appropriate discovery.

the proceeding, that the Hearing Officer was concerned about the tone used by Palmer's counsel, as she stated: "You need to resolve your tone, please. We're in an administrative hearing and part of my job is to make sure we proceed in an orderly manner." *Id.* Attorney Bennett replied: "Is a recording being made that will reflect my tone?" He then proceeded to lodge an objection concerning Ms. Palmer's use of certain notes while testifying. (R., 216).

The Hearing Officer told Attorney Bennett: "So you're misconstruing facts," because as far as she was concerned "[n]o one has asked me to make a ruling about any notes." *Id.* Attorney Bennett told her: "Don't cut me off while I'm making a record." *Id.* A discussion then ensued about the notes and whether Palmer should be required to show the notes to opposing counsel if she was going to be using them on the witness stand. Attorney Bennett continued to argue the point until the following colloquy occurred:

HEARING OFFICER: Okay. So I'm going to stop you and I'm going to enter –

MR. BENNETT: You can't stop me.

HEARING OFFICER: Yes, I can.

MR. BENNETT: I'm making a record and an objection.

(OFF RECORD)

(R. 218).

There was a discussion off the record for an unknown period of time. When the record resumed, the following colloquy took place:

HEARING OFFICER: Okay, so I'm putting the record –

MR. BENNETT: Are we back on the record?

HEARING OFFICER: We are back on the record.

9

MR. BENNETT: Okay. I want the record to reflect at this point that the Hearing Officer has shut off the recording and turned it back on in order to say something off the record. You absolutely interfered with the creation of a public record in an official proceeding.

HEARING OFFICER: Okay.

MR. BENNETT: You can't do that.

HEARING OFFICER: Okay.

MR. BENNETT: I'm not proceeding. I'd like a ruling on my motion to recuse. You shut off an official proceeding in the middle in order to make a statement to me.

HEARING OFFICER: It's my job as the hearing officer to regulate the course of the hearing, including what goes on the record and what is not on the record. What I wanted to remind you of off the record was what we agreed to prior to the hearing which is when I would give you the opportunity to put your objections on the record, which was explicitly stated to you to be after your client testified during a break in the proceedings, okay?

So now I'm going to try to back up and address your varies [sic] objections. So I've made a ruling that if you want to show your client's exhibits, a record or documents, whatever she brought, to the State, give them a chance to review it. I will then make a determination about whether she can have them with her to testify. Would you like to take advantage of that or not?
(R., 218-19).

The Hearing Officer and Attorney Bennett then engaged in a discussion for several minutes about whether and how Ms. Palmer could use her notes, if she decided to refer to them. The Hearing Officer made her ruling, and was prepared at

that point to resume the testimony of Ms. Palmer. Attorney Bennett, however, wanted to pursue his additional objections:

> HEARING OFFICER: I think with that, we can continue with questions.
>
> MR. BENNETT: I just want the record to reflect that I was in the middle of an objection.
>
> HEARING OFFICER: But you were making statements that you – we had talked about you doing outside the presence of the Board.
>
> MR. BENNETT: I was making an objection, a due process objection. You interfered with my ability to make that record, and now you're telling me I can't complete the objection; is that correct?
>
> HEARING OFFICER: No. Go ahead and complete the objection, please. Why you do [sic] all of them on the record now.
> (R. 221).

Attorney Bennett then made a fairly lengthy statement during which he complained about: the alleged lack of discovery; the fairness of the hearing; how his subpoena requests were handled; time limits imposed by the hearing officer; alleged lack of notice, and; the standard for the admission of evidence. While in the middle of this statement, Attorney Bennett directly addressed the Chair of the Board and said:

> MR. BENNETT: Ma'am, Ms. Soneson, is there a problem because you're huffing and puffing?
>
> HEARING OFFICER: I'm going to ask –
>
> MS. SONESON: (Indiscernible).

11

HEARING OFFICER: Please don't engage. Just continue with your argument, please Attorney Bennett.

MR. BENNETT: The last time I was here I was ill, and this particular hearing officer refused to recognize that and voted against a continuance.

HEARING OFFICER: Are you talking about a Board member? Because you said hearing officer.

MR. BENNETT: I'm talking about – I believe it says Soneson.

HEARING OFFICER: Okay. I just want the record to be clear. You said hearing officer, so –

MR. BENNETT: Okay. I meant – I believe it's Nurse Soneson.

HEARING OFFICER: Okay.

MR. BENNETT: And so I just – to the extent that she's making herself and her feelings known, I want the record to reflect that, and I move that she recuse herself from further involvement in these proceedings on the basis of bias and prejudice against myself and my client, and unprofessional conduct in this proceeding and how she treated me the last time I was here. (R. 225-26).

Attorney Bennett continued with his objections, including that the "stipulation" be provided to the Board, which the Hearing Officer agreed to do. (R. 226-27). The Hearing Officer again requested Attorney Bennett to finish up so that more testimony could be taken. Attorney Bennett was not done and continued his series of objections, often repeating what he had already said. Finally, the Hearing Officer said: "Are you about done?" (R. 229). At this point, Attorney Bennett moved for a mistrial or, in the alternative, for the Hearing Officer and the Chair to

12

recuse themselves from the proceeding. Both the Hearing Officer and the Chair declined to do so. (R. 229-30).

The Hearing Officer responded to some of the objections advanced by Attorney Bennett, and also referred to her prior written rulings. Attorney Bennett returned to the fact that the Hearing Officer went off the record for a period of time:

> MR. BENNETT: Finally, I want to reemphasize that shutting off the official record and addressing me in the presence of the Board and then turning on the official record after the fact is an absolute violation of multiple due process concerns as well as conduct code concerns. And I would emphasize my client's objection to proceeding without a mistrial based on that.
>
> HEARING OFFICER: Okay. So you're repeating the same arguments.
>
> MR. BENNETT: I'm making sure that that's clear on the record.
>
> HEARING OFFICER: I think it's –
>
> MR. BENNETT: I'm not repeating. I'm making sure it's on the record.
>
> HEARING OFICER: And it is on the record. You were delving into information that we had agreed would take place outside the Board's hearing. I then resumed the hearing and repeated the same information on the record. So with that, we're going to resume the testimony . . . .
>
> MR. BENNETT: And I dispute that. I dispute that characterization.
>
> HEARING OFFICER: That's fine.
> (R. 231-32).

Palmer now claims that the Hearing Officer and the Board Chair abused their discretion by failing to declare a mistrial and/or to recuse themselves. In her Brief

13

to this court, Palmer has stated: "The Hearing Officer, in the middle of the Petitioner's motions, turned off the Record and scolded, berated and belittled the Petitioner in front to the voting body of the Respondent." *Pet.'s Reply Brief at 10 citing R 214.* The court has scrutinized the entire record of this proceeding and has paid particular attention to that portion of the hearing transcript at which the Hearing Officer went off the record.

The court notes that Palmer's citation to the record (R. 214) does not provide any support whatsoever for her claim that the Hearing Officer "scolded, berated and belittled" her or her attorney. Indeed, nothing in the entire hearing transcript supports such a claim. It is also clear to the court, from the entire context of what happened, that Palmer's counsel decided, in the middle of his client's direct examination, to interrupt the proceedings to make a litany of objections and motions in front of the Board members, notwithstanding the fact that it had been previously agreed that he would be given the opportunity to put his objections and motions on the record *after* his client had testified.

The court is satisfied that the Hearing Officer went off the record to remind Palmer's counsel of that agreed-upon procedure. There is absolutely no support for Palmer's allegations that the hearing officer scolded, berated, belittled, or otherwise chastised her or her counsel. Rather, it strikes the court that the Hearing Officer demonstrated commendable patience with Palmer's counsel, who consistently interrupted her and whose manner of addressing the Hearing Officer bordered on being disrespectful, at the least. While it may have been unwise for the Hearing Officer to go off the record at that point in the proceeding (because it simply generated an additional objection and more accusations), Palmer was not prejudiced in any way and the record supports the conclusion that she was given more than an ample opportunity to make and record her objections and motions.

14

Moreover, Palmer has accused the Hearing Officer of "near-constant berating" of her and her attorney. *Pet.'s Reply Brief at 10. See also Pet.'s Brief at 14.* The court has personally examined every record reference cited by Palmer in support of this allegation and finds a complete absence of support for it.

Finally, the court concludes, based on its review of the record, that neither the Hearing Officer nor the Board Chair abused their discretion by failing/refusing to recuse themselves. "Due process requires a fair and unbiased hearing." *Friends of Maine's Mts. v. Bd. of Envtl. Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689. To show bias, Palmer must "overcome a presumption that the fact-finders, as state administrators, acted in good faith." *Id.* (internal citation omitted). Presiding officers have the "authority to regulate the course of the hearing." 5 M.R.S. § 9062(3)(C). A hearing officer's "expressions of impatience, dissatisfaction, annoyance, and even anger" do not constitute bias or prejudice. *Lane Const. Corp. v. Town of Washington*, 2008 ME 45, ¶ 30 (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). Here, Palmer has not overcome the presumption that the Hearing Officer acted in good faith to regulate the course of the hearing by requesting counsel to ask relevant and material questions, to adhere to the pre-determined order of the hearing or to impose reasonable time limits. (R. 163-64, 170, 178-79, 184, 218-32, 330-33, 338-39.) Likewise, Palmer has not overcome the presumption that the chairperson acted in good faith because the record does not reflect that the chairperson acted improperly. *See Lane Const. Corp. v. Town of Washington*, 2008 ME 45, at ¶ 30.

2. Procedural Due Process

Palmer argues that the Board's decision was the result of procedural unfairness. Procedural due process claims are first reviewed to "determine if the government has deprived a claimant of life, liberty or property interests. Second, if such a deprivation occurred, it is then determined what process, pursuant to the Fourteenth Amendment, is due utilizing the factors in *Mathews v. Eldridge*, 424 U.S.

15

319 (1976)." *DaimlerChrysler Corp. v. Me. Revenue Servs.*, 2007 ME 62, ¶ 26, 922 A.2d 465. The *Eldridge* factors assess:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at ¶ 26. Palmer has a property interest in her nursing license. *See Balian v. Board of Licensure in Med.*, 1999 ME 8, ¶ 11, 722 A.2d 364. Palmer alleges that her right to due process was violated through the Hearing Officer's action of turning off the recording, criticizing her attorney, imposing time limits on the hearing, arbitrarily imposing rules, and interrupting cross-examination. "The essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard." *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 15, 723 A.2d 412. Palmer was given the opportunity to introduce evidence and did present evidence through cross-examination of witnesses and her own testimony. *See Bolduc v. Androscoggin County Comm'rs*, 485 A.2d 655, 658 (Me. 1984). Further, the Hearing Officer articulated an evidentiary standard and explained the reason she went off the record. (R. 131-132; 218-219.)

The court has already addressed the issue of the Hearing Officer going off the record and that reasoning applies here as well. The Hearing Officer acted within her role of regulating the course of the hearing. 5 M.R.S. § 9062(3)(C). The procedural irregularities, if any, did not add a risk of erroneous deprivation of Palmer's license, and the value of any additional or substitute procedural safeguards would have been minimal. *See DaimlerChrysler Corp. v. Me. Revenue Servs.*, 2007 ME 62, at ¶ 26.

16

### 3. Substantial Evidence

Palmer claims that the Board's decision was not supported by substantial evidence. The court reviews the factual findings of the Board to determine whether it "made findings not supported by substantial evidence in the record." *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 16, 60 A.3d 1272. The court will "examine the entire record to determine whether the agency could fairly and reasonably find the facts as it did, even if the record contains other inconsistent or contrary evidence." *Id.* The record contains Palmer's statement that she did raise her voice. The testimony of Ms. Thomas, who described Ms. Palmer as "screaming" at the patient/resident using body language that she found "very threatening," was competent evidence supporting the Board's findings. Moreover, the Board had before it the American Nurses Association Code of Ethics, and testimony from a nurse supervisor that yelling/screaming at a patient constitutes unprofessional conduct. (R. 28-29, 50-55, 142.) Accordingly, the Board's decision was supported by substantial evidence in the record.

### 4. Whether the Board's Decision Applied a Clear Standard

Lastly, Palmer contends that the standard applied by the Board was unclear and not supported by expert testimony. *Mitchell v. Jackson*, 627 A.2d 1014, 1016-17 (Me. 1993).

Palmer was charged with and disciplined for violating 32 M.R.S. §2105-A(2)(F) for engaging unprofessional conduct and 32 M.R.S. §2105-A(2)(H) for violating a Board Rule, i.e., Board Rule 3(U). In particular, Palmer was found to have engaged in unprofessional conduct by: (1) engaging in behavior that exceeded professional boundaries, and; (2) engaging in behavior that violated Provision 1 of the American Nurses Association Code of Ethics requiring nurses to practice with compassion and respect for the inherent dignity, worth and unique attributes of every person.

17

The State argues that the admission in evidence of the applicable provision of the American Nurses Association Code of Ethics was sufficient for an administrative hearing. *See Balian*, 1999 ME 8, at ¶ 15. Further, if an act is indisputably improper, a professional regulatory board does not need to present any evidence of the applicable standard to support a finding that the standard has been violated. *Zablotny v. State Board of Nursing*, 2017 ME 29, ¶ 22, 156 A.3d 126. While Palmer denied yelling at a patient during the hearing, multiple prior statements made by her in which she admitted raising her voice to the patient were made part of the administrative record. (R. 24, 28-29.) The record also includes the American Nurses Association Code of Ethics, Provision 1, and Ms. Feltis's testimony that yelling/screaming at a patient/resident violated that Code of Ethics. The Board did not commit error in concluding that conduct by a nurse of yelling and screaming at a patient/resident in a facility such as the one DH was in, constituted unprofessional conduct. As applied to the facts of this case, the standard of conduct by which Ms. Palmer was judged was not unclear, nor was there a need to present additional expert testimony that screaming at a patient in the manner described by Ms. Thomas was unprofessional.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED and the decision of the State Board of Nursing is AFFIRMED.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: September 24, 2019

William R. Stokes
Justice, Superior Court

18